IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| POWEROASIS, INC. and ) | |
| POWEROASIS NETWORKS, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 04-12023 RWZ |
| ) | |
| WAYPORT, INC. ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR JUDGMENT ON THE PLEADINGS AS TO DEFENDANT'S
COUNTERCLAIM FOR UNENFORCEABILITY OF THE PATENTS IN SUIT**

This Court should enter judgment on the pleadings under Fed.R.Civ.P. 12(c) on Wayport's Counterclaim that the patents in suit[1] are unenforceable, because the Counterclaim fails to allege the unenforceability of the '658 patent with the requisite particularity, and, as to the '400 patent, fails to allege facts sufficient as a matter of law to support a cause of action for patent unenforceability.

**I.      INTRODUCTION**

On September 19, 2004, the plaintiffs, PowerOasis, Inc. and PowerOasis Networks, LLC (collectively, "PowerOasis") commenced this action by filing their Complaint.

In the Complaint, PowerOasis alleges that Wayport infringes the '658 and '400 patents.

The '658 patent was issued on October 15, 2002. The '400 patent was issued on April 13, 2004. The '400 patent states:

---

[1] The patents in suit are U.S. Patent No. 6,466,658 ("the '658 patent") and U.S. Patent No. 6,721,400 ("the '400 patent"). Copies are attached hereto as Exhibits A and B.

- 1 -

>This application is a continuation of application U.S. patent application Ser. No. 09/985,830, filed on November 6, 2001, now U.S. Pat. No. 4,466,658, which is a continuation application of U.S. patent application Ser. No. 09/594,028, filed on June 15, 2000, now U.S. Pat. No. 6,314,169, which is a continuation-in-part of U.S. patent application Ser. sNo. 09/156,487, filed September 18, 1998, now abandoned, which is a continuation of application of U.S. patent application Ser. No. 08/796,562, filed on Feb. 6, 1997, now U.S. Pat. No. 5,812,643.

The specification of the '400 patent, contained at column 1, line 1 through column 15, line 67, is identical to the specification of the '658 patent, contained at column 1, line 1 through column 15, line 15 thereof, except that the specification of the '400 patent contains the additional wording set forth at column 15, lines 15-60 (hereinafter referred to the "'400 patent Additional Language"), as follows:

>It is to be understood that in applicants' earliest application, the payment mechanism was broadly described and was intended to include the following means of identifying users:
>
>>using a MAC address of the customer's computer;
>>
>>using the serial number of the microprocessor or hard drive;
>>
>>using a unique hardware feature of the computer that is built-in at manufacture or added post sale;
>>
>>using a unique software feature that is stored in the computer on either a temporary or permanent basis, e.g. a cookie, a file, a program, or a script whether encrypted or not;
>>
>>using a digital identity stored on one or more servers which authenticates the customer and links the customer's identity with his/her payment information.
>
>It is also to be understood that in applicants' earliest application, the customer interface was broadly described and was intended to include the following:
>
>>a heads-up display;
>>
>>a projection display;
>>
>>a display that is also used for general advertising;
>>
>>a display that is remote from the rest of the machine;

> a display that has a printer for receipts.
>
> It is also to be understood that in applicants' earliest application, the electronic circuit for determining when the transaction is complete was broadly described and was intended to include the following:
>
>> software/hardware timing of messages to determine inactivity and therefore, end of the transaction;
>>
>> detecting approval of the credit card authorization.
>
> It is also to be understood that in applicants' earliest application, the telecommunications channel access circuit was broadly described and was intended to include the following:
>
>> allowing certain local or directed communications (advertising or site information) even while external communication is blocked pending payment or payment approval.
>
> It is also to be understood that in applicants' earliest application, the switchable circuit was broadly described and was intended to include the following:
>
>> use of a router.

On October 29, 2004, Wayport filed the Answer and Counterclaims of Defendant, Wayport, Inc.

In its Counterclaim, Wayport alleges that, "the claims of the '658 patent are . . . unenforceable" (¶7); that, "the claims of the '400 patent are . . . unenforceable" (¶9); and that the claims of the '400 parent are "invalid and unenforceable for inequitable conduct" (¶¶10-18).[2]

## II. ARGUMENT

### A. The Counterclaim Fails To Allege The Unenforceability Of The '658 Patent With The Required Particularity

Wayport makes the bald allegation in its Counterclaim that the '658 patent is "unenforceable," but fails to allege any facts in support of that allegation. A claim for patent unenforceability is a claim sounding in fraud, and must be pled with particularity:

- 3 -

> The court will dismiss Symbol's claims for unenforceability without prejudice. Fraud is a clear exception to the otherwise broad notice-pleading standards under Fed. R. Civ. P. 9. A claim of patent unenforceability is premised upon inequitable conduct before the Patent & Trademark Office ("PTO"), which is a claim sounding in fraud. A plaintiff alleging unenforceability, therefore, must plead with particularity those facts which support the claim the patent holder acted fraudulently before the PTO. As Symbol has failed to adequately plead its bases for unenforceability of the remaining HHP Patents, that portion of Count II will be dismissed without prejudice.

*Symbol Technologies, Inc. v. Hand Held Products, Inc.*, 2003 U.S. Dist. LEXIS 21002, at [13] (D. Del. 2003).

Since the Wayport Counterclaim fails to assert any factual basis whatsoever to support a counterclaim of unenforceability of the '658 patent, it fails as a matter of law to plead the unenforceability of the '658 patent with the requisite particularity. Accordingly, judgment of dismissal should be entered in favor of PowerOasis.

### B. Wayport's Counterclaim For Unenforceability Of The '400 Patent Should Be Dismissed

The gist of the Counterclaim as to the '400 patent is that, by filing the application for that patent as a "continuation" application rather than a "continuation-in-part" application, PowerOasis allegedly represented to the PTO that it contained no "new matter," in comparison to the application for the parent '658 patent. Wayport further alleges that such representation was false, because the application for the '400 patent contained "subject matter that was not part of the [parent] application." (¶¶13-18) Wayport further alleges that this misrepresentation constitutes inequitable conduct rendering the patent unenforceable.

Accepting Wayport's factual allegations in its Counterclaim as true, and drawing all reasonable inferences in Wayport's favor, judgment should be entered in favor of PowerOasis on

---

[2] For the convenience of the Court, a copy of the Answer and Counterclaims of Defendant, Wayport, Inc. is attached hereto as Exhibit C.

- 4 -

the pleadings as to the '400 patent. Under applicable Federal Circuit law, "in order to prove inequitable conduct in the prosecution of a patent, [the defendant] must have provided evidence of affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Dayco Products, Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1362 (Fed. Cir. 2003). However, the "new subject matter" alleged in paragraph 13 of the Counterclaim constituted only clarifying information that provided some specific examples of more generic disclosures in the parent application. As discussed below, this clarifying information did not constitute "new matter" under applicable law.

Since the pleadings establish that the application for what became the '400 patent contained no "new matter," PowerOasis cannot have engaged in inequitable conduct by filing its application as a "continuation" application rather than a "continuation-in-part" application. Moreover, even if the additional information included in the application for the '400 patent did constitute "new matter," the pleadings establish that any such "new matter" was disclosed to the patent examiner. Finally, as a matter of law, the alleged intentional inclusion of "new matter" in a continuation application would not constitute inequitable conduct.

### 1. On The Face Of The Pleadings, The Applicant Made No Misrepresentation To The Patent & Trademark Office

#### a. "New Matter" In Continuation Applications

A continuation application is a patent application that is based on an earlier-filed (or parent) application, and is governed by 35 U.S.C. §§ 111(a) and 120. Procedures for filing continuation applications are further set forth in 37 C.F.R. 1.53(b). The continuation application must be filed while the earlier application is still pending in the Patent Office. 35 U.S.C. §120.

Under applicable PTO regulations and procedures[3], there is a distinction between a "continuation" application and a "continuation-in-part" ("CIP") application:

> A "continuation" application claims the same invention claimed in an earlier application, although there may be some variation in the scope of the subject matter claimed . . . a "CIP" application is a continuing application containing a portion or all of the disclosure of an earlier application together with added material not present in that earlier application.

*Transco Products, Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 555 (Fed. Cir. 1994).

Two statutory provisions prohibit the inclusion of "new matter" in a patent application. The first, 35 U.S.C. §132, states, "[n]o amendment shall introduce new matter into the disclosure of the invention." The second, 35 U.S.C. §251, provides that, "[n]o new matter shall be introduced into the application for reissue." The Rules of Practice in Patent and Trademark Cases (37 C.F.R.) state that, "[n]o new matter may be introduced into an application after its filing date." 37 C.F.R. §1.53(b). This provision applies to continuation applications. However, while the patent statute and the regulations promulgated under it prohibit the inclusion of "new matter" in several types of patent applications, including continuation applications, neither the patent statute nor the regulations define "new matter." Since "new matter" is not defined in any of the above references, one must turn to the courts to obtain the meaning of that term.

---

[3] According to The Manual of Patent Examining Procedure ("MPEP"), which does not have the force of law but is used by patent examiners,

> A continuation is a second application for the same invention claimed in a prior nonprovisional application and filed before the original prior application becomes abandoned or patented . . . The disclosure presented in the continuation must be the same as that of the original application: i.e., the continuation should not include anything that would constitute new matter if include in the original application.

MPEP § 201.07 (Rev. 2, May 2004).

As interpreted by the courts, the prohibition on "new matter" in amended or continuation applications <u>does not</u> require that the specification in those applications be literally identical to the parent application.

> "New matter" is a technical legal term in patent law – a term of art. Its meaning has never been clearly defined for it cannot be. The term is on a par with such terms as infringement, obviousness, priority, abandonment, and the like which express ultimate legal conclusions and are in the nature of labels attached to results after they have been reached by the processes of the reasoning grounded on analysis of factual situations. In other words, the statute gives us no help in determining what is or is not "new matter." We have to decide on a case-by-case basis what changes are prohibited as "new matter" and what changes are not. *In a sense, anything inserted in the specification that was not here before is new to the specification but that does not necessarily mean it is prohibited as "new matter."*

*In Re Oda*, 443, F.2d 1200, 1203 (C.C.P.A. 1971) (emphasis added).

As stated by the Federal Circuit, "the Court of Customs and Patent Appeals has long recognized that an invention may be described in different ways and still be the same invention." *Kennecott Corp. v. Kyocera International, Inc.*, 835 F.2d 1419, 1422 (Fed. Cir. 1987). The recitation of a specific example of a more generic term described in the parent application does not constitute "new matter." *Chemcast Corp. v. Arco Industries Corp*., 1987 U.S. Dist LEXIS 13913 at [49], 5 U.S.P.Q. 2d 1225 (E.D. Mich. 1987), *aff'd in part, rev'd in part, vacated in part and remanded,* 854 F.2d 1328 (Fed. Cir. 1988).

A "subsequent clarification" of an original disclosure does not constitute "new matter." *In Re Nathan*, 328 F.2d 1005, 1008 (C.C.P.A. 1964). Similarly, "if the later-submitted material accused of being "new matter" simply clarifies or completes the prior disclosure it cannot be treated as "new matter." *The Triax Co. v. Hartman Metal Fabricators, Inc*., 479 F.2d 951, 957 (2nd Cir. 1973); *Stearn v. Superior Distributing Co*., 674 F. 2d 539, 544 (6th Cir. 1982) ("New matter is not introduced by amendments, continuation applications, or CIPs which merely clarify

or make definite that which was expressly or inherently disclosed in the parent application…")
*See*, 4 *Chisum on Patents* §11.04[2]("An amendment to a specification does not violate the new matter rule if it merely 'clarifies or completes the original disclosure.'")  Likewise, an additional description that was "inherent" in the structure described in the parent application does not constitute "new matter." *Kennecott*, *supra*. at 1423.  *See also, Turbocare Div. of Demag Delaval Turbomachinery Corp. v. G.E.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001) ("the fundamental inquiry is whether the material added by amendment was inherently contained in the original application.") (citations omitted).

Under applicable case law, therefore, the mere addition of additional words to the specification of a continuation application, in comparison to the wording of the parent application, does not violate the prohibition against "new matter."  Additional material that is included in the specification of the continuation application for "clarification" or to describe "inherent" features of the prior disclosure does not constitute "new matter."  This principle is recognized by the MPEP, which states that the specifications and drawings of a continuation application "are not limited to a reproduction or 'true copy' of the prior application, *i.e.,* <u>the applicant may revise the specification for clarity or contextual purposes *vis a vis* the specification originally filed in the prior application</u> . . ."  MPEP, § 201.06(c) III.

      **b.**  <u>**The '400 Patent Does Not Contain "New Matter"**</u>

Under the above-articulated judicial standard, the '400 Patent Additional Language does not constitute "new matter."

The '400 Patent Additional Language, by its terms, is merely a clarification of the specification of the parent application.  Each paragraph commences with the preface, "It is to be understood that in the applicants' earliest application…," and proceeds with a statement about a feature of the invention (such as "the payment mechanism") that was "broadly described and was

intended to include" particular stated features. The particular features are specific examples of more generic terms described in the parent application. Since they are narrower in scope than the generic features that were "broadly described" in the parent application, they do not expand the scope of those generic features or cause the disclosure of the '400 patent to cover subject matter not already covered by that of the parent '658 patent.

A similar situation was addressed in *Chemcast, supra*, 1987 U.S. Dist. LEXIS 13913 at [49]. The original specification in that case stated:

> The annular locking portion 12 of the sealing member 10 is preferably comprised of a rigid castable material, such as a castable resin material, polyurethane, vinyl, a thermoplastic, thermosetting plastic, or any mixtures thereof.

The specification was amended by adding words stating an example:

> The annular locking portion 12 of the sealing member 10 is preferably comprised of a rigid castable material, such as a castable resinous material, either a thermoplastic or thermosetting resin, or any mixtures thereof, for example, polyurethane or polyvinyl chloride.

The court held that the additional wording did not constitute "new matter":

> The Court concludes that including the term polyvinyl chloride in the specification is not an addition of new matter. The term is simply referred to in the amendment of the specification as an example of the type of vinyl that would be appropriate as a material in the grommet. As a more specific form of the generic vinyl term, it merely clarifies and makes more formal that which was already disclosed in the specification.

The parent '658 patent specification discloses each of the broad generic features which are clarified in the application for the '400 patent. Thus, the "payment mechanism" is disclosed in the parent specification at col. 2, ln. 46-57, col. 6, ln. 1-9, 47-65, col. 9, ln. 63- col. 10, ln. 4, and col. 10, ln. 51-62; the "customer interface" is disclosed at col. 6, ln. 9-32, col. 9, ln. 41-43, and Fig. 4, item 110; the "electronic circuit for determining when the transaction is complete" is disclosed at col. 2, ln. 63-65, col. 6, ln. 33-38, and col. 10, ln. 23-28; the "telecommunications

- 9 -

channel access circuit" is disclosed at col. 3, ln. 39-47, col. 5, ln. 53, 61-67, col. 9, ln. 1-8, and Figs. 2-4, item 120; and the "switchable circuit" is disclosed at col. 5, ln. 56-67 and Figs. 2, 4.  In each instance, the '400 patent application provided examples of the previously-described generic terms in the application for what became the '658 patent.

The additional examples do not broaden or modify the invention disclosed in the '658 patent; they clarify and complete the earlier disclosure.  As such, they do not constitute "new matter."  *See*, *Quigley Corp. v. Gumtech Int'l*, 2000 U.S. Dist. LEXIS 4957 at [61] – [72] (E. D. PA. 2000) ("[T]he alteration of the definition of "oral mucosa" to include the throat – part of the body already explicitly discussed in the specification – would certainly seem to be a mere clarification of the use of that term, rather than an addition of new material into the specification.")

In sum, the additional material included in the application for the '400 patent was not "new matter," and was properly included in PowerOasis' continuation application.

### c.  The Additional Material Was Disclosed To And Approved By The Patent Examiner

The application for the '400 patent did in fact disclose unambiguously that it contained additional material to the Examiner.  The above-quoted language ('400 patent, col. 15, ln. 15-60) states on its face that it is referring back to "the applicant's earliest application," which can only mean that the examples that follow are not in the preceding application.

The fact that the PTO allowed the application and did not require its re-filing as a continuation-in-part application shows that the PTO did not consider the additional material to be "new matter."  That determination is entitled to great weight, and the determination of the PTO to accept the new application, thereby signifying that it did not consider it to be "new matter," is

presumptively correct.  *See*, *Triax Co. v. Hartman Metal Fabricators, supra*, 479 F.2d at 957 (2nd. Cir. 1973).

### 2. The Failure To Disclose New Matter Does Not Constitute Inequitable Conduct

Assuming *arguendo* that the additional material does constitute "new matter," its inclusion in a continuation application does not constitute inequitable conduct.

> Technical violations of PTO procedures, absent fraud or intentional deception, are not inequitable conduct as would invalidate a patent.  The courts have consistently rejected the notion of per se forfeiture based on non-fraudulent failure to comply with a rule of practice before the PTP.

*Seiko Epson Corp. v. Nu-Kote International, Inc*., 190 F.3d 1360, 1367 (Fed. Cir. 1999).

A diligent search of the case law reveals no support whatsoever for the proposition that the filing of a continuation application containing "subject matter that was not part of the [parent] application" (Counterclaim, ¶13) gives rise to a cause of action for patent unenforceability by reason of inequitable conduct, even if the applicant "knew or should have known that the addition of new matter was material to the prosecution of the . . . application," (Counterclaim, ¶15).

Finally, It is noteworthy that the MPEP (§201.06(c)), itself states,

> An applicant is advised to simply file a continuing application with a newly executed oath or declaration when it is questionable as to whether the continuing application adds material that would have been new matter if presented in the prior application.

This is exactly the procedure that PowerOasis followed.  It is the Patent Examiner's job to determine whether the continuation application does or does not include "new matter," which is sensible in that "new matter" is not a defined term.  There is no basis for Wayport to argue that the mere filing of a continuation application containing expressly disclosed additional matter constitutes inequitable conduct.

## CONCLUSION

For the reasons stated above, PowerOasis moves the Court for judgment on the pleadings dismissing Wayport's Counterclaim for unenforceability of the '658 and '400 patents.

>Respectfully submitted,
>
>POWEROASIS, INC. and
>POWEROASIS NETWORKS, LLC
>By their attorneys,
>
>/s/ Sibley P. Reppert
>_____
>Sibley P. Reppert, B.B.O. No. 416900
>William A. Scofield, Jr., B.B.O. No. 448940
>LAHIVE & COCKFIELD, LLP
>28 State Street
>Boston, Massachusetts  02109 – 1784
>(617) 227-7400 (telephone)
>(617) 742-4214 (fax)

## CERTIFICATE OF SERVICE

I, Sibley P. Reppert, hereby certify that I caused the foregoing to be served by first class mail, postage pre-paid, on counsel of record this 18th day of November, 2004.

>/s/ Sibley P. Reppert
>_____
>Sibley P. Reppert