UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| POWEROASIS, INC. and<br>POWEROASIS NETWORKS, LLC,<br><br>      Plaintiffs-<br>         Counterclaim Defendants,<br><br>      v.<br><br>WAYPORT, INC.,<br><br>      Defendant-<br>         Counterclaim Plaintiff. | Civil Action No.: 04-12023-RWZ<br><br>Hon. Rya W. Zobel |

**WAYPORT INC.'S OPPOSITION TO POWEROASIS' MOTION FOR JUDGMENT ON THE PLEADINGS AS TO DEFENDANT'S COUNTERCLAIM FOR UNENFORCEABILITY OF THE PATENTS IN SUIT**

**I.    INTRODUCTION**

In response to PowerOasis' accusations of patent infringement, Wayport asserts several affirmative defenses and counterclaims, including non-infringement, invalidity and unenforceability. Without requesting a meet and confer as required by Local Rule 7.1(a)(2), PowerOasis filed its motion pursuant to Federal Rule of Civil Procedure 12(c), seeking judgment on the pleadings as to Wayport's counterclaims for unenforceability of the patents-in-suit. PowerOasis' arguments in support of its motion are flawed because, among other things, they misconstrue Wayport's counterclaims, and misapply case law relating to inequitable conduct and Federal Rule 12(c). In essence, PowerOasis' motion is nothing more than an attempt to avoid discovery on the well-pled charge of inequitable conduct.

## II.     BACKGROUND

An alleged patent infringer has three primary potential defenses or counterclaims to defeat a charge of infringement:  1) non-infringement; 2) invalidity; and 3) unenforceability.  *See* 35 U.S.C. § 282.

A non-infringement defense is an assertion that the alleged infringing product or act is not covered by the claims of the patent-in-suit.  *See Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1344 (Fed. Cir. 2003).

An invalidity defense is an argument that the patent should not have issued for failure to meet one or more of the required conditions for patentability, *e.g.*, the claimed invention is not new or novel (35 U.S.C. § 102); the claimed invention is obvious over the prior art (35 U.S.C. § 103); or the specification of the patent is deficient in some manner (35 U.S.C. § 112).

An unenforceability defense is premised on the assertion that the patentee failed to submit material information to the patent examiner or knowingly made false or misleading statements to the patent examiner with the intent to mislead the examiner.  *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995).  A patent can thereby be rendered unenforceable even if it otherwise meets the required conditions for patentability.  *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1213 (Fed. Cir. 1987).

In this case, Wayport asserts in its Counterclaims that it does not infringe any claims of the patents-in-suit (Wayport's Counterclaims, ¶¶ 6 and 8) and further asserts three counterclaims regarding the validity and enforceability of the patents-in-suit:[1]

1. That the claims of the '658 patent are *invalid* for failing to meet one or more of the requisite conditions of patentability specified by Title 35 of the United States Code, including without limitation §§ 102, 103 and 112. (Wayport's Counterclaims, ¶ 7);

---

[1]     The patents-in-suit are U.S. Patent No. 6,466,658 ("the '658 patent") and U.S. Patent No. 6,721,400 ("the '400 patent").

2. That the claims of the '400 patent are *invalid* for failing to meet one or more of the requisite conditions of patentability specified by Title 35 of the United States Code, including without limitation §§ 102, 103 and 112. (Wayport's Counterclaims, ¶ 9); and

3. That the *'400 patent* is unenforceable due to inequitable conduct (Wayport's Counterclaims, ¶¶ 10-18).

Despite PowerOasis' argument to the contrary, Wayport does not state a counterclaim of unenforceability against the '658 patent on the ground of inequitable conduct.

### III.  ARGUMENT

#### A.  A Motion For Judgment On The Pleadings Under Fed. R. Civ. P. 12(c) Is A Harsh Remedy That Should Not Be Readily Granted

On a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), "rendition of judgment in such an abrupt fashion represents an extremely early assessment of the merits of the case, [therefore] the trial court must accept all of the nonmovant's well-pleaded factual averments as true, and draw all reasonable inferences in [its] favor." *Rivera-Gomez v. De Castro*, 843 F.2d 631, 635 (1st Cir. 1988) (citations omitted).

As demonstrated below, PowerOasis has failed to show that Wayport's unenforceability counterclaims should be dismissed, particularly given that the Court must accept all of Wayport's well-pled factual averments and must draw all reasonable inferences in Wayport's favor. *See id.* ("[T]he court may not grant a defendant's Rule 12(c) motion 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (citation omitted)).

#### B.  Wayport Does Not Assert That The '658 Patent Is Unenforceable Due To Inequitable Conduct

PowerOasis argues that Wayport failed to allege its unenforceability counterclaim against the '658 patent (Wayport's Counterclaims, ¶ 7) with the requisite particularity. (PowerOasis Br. at 3-4). The premise of PowerOasis' argument is apparently that this counterclaim is based on

inequitable conduct because the counterclaim contained the word "unenforceable." (*See* block quote at page 4 in PowerOasis' brief from *Symbol Technologies, Inc. v. Hand Held Products, Inc.*, 2003 U.S. Dist. LEXIS 21002, at [13] (D. Del. 2003)). PowerOasis is incorrect. Wayport did not allege unenforceability of the '658 patent due to inequitable conduct, but rather that the claims of the '658 patent are invalid and *therefore* the '658 patent is unenforceable.[2] To clear up any confusion that may be caused by use of the word "unenforceable" in Counterclaim ¶ 7, though, Wayport will move to amend its Answer and Counterclaims to delete that word from ¶ 7.[3]

Accordingly, PowerOasis' request for judgment of dismissal of Wayport's counterclaim as to the '658 patent should be denied.

### C. PowerOasis Does Not Support Its Motion To Dismiss Wayport's Counterclaim At ¶ 9

Although PowerOasis' Motion requests dismissal of ¶ 9 of Wayport's Counterclaims (*see* PowerOasis' Motion, ¶ 2), PowerOasis' memorandum in support of its motion is totally silent as to why Wayport's counterclaim at ¶ 9 (relating to invalidity of the '400 patent) should be dismissed. Nonetheless, as with Wayport's invalidity counterclaim against the '658 patent, Wayport will amend its Answer and Counterclaims to delete the word "unenforceable" from ¶ 9 to avoid any potential confusion.

Accordingly, PowerOasis' motion for judgment of dismissal as to ¶ 9 of Wayport's Counterclaims should be denied.

---

[2]   Had PowerOasis sought a meet and confer before filing its motion, as it was required to do under Local Rule 7.1(a)(2), this issue would have been resolved without having to impose on the Court's time and resources.

[3]   Wayport's understanding is that PowerOasis does not otherwise argue that Wayport's counterclaim as to the '658 patent should be dismissed. (*See* PowerOasis Br. at 3-4).

### D. Wayport's Counterclaim Of Unenforceability Of The '400 Patent Cannot Be Dismissed Because There Is A Genuine Dispute Over PowerOasis' Fact-Based Allegations

PowerOasis makes three arguments regarding the unenforceability counterclaim relating to the '400 patent. When considered with the applicable patent law as a backdrop, it is apparent that each of PowerOasis' arguments is flawed, and that none justify dismissal of Wayport's counterclaim.

#### 1. Failure To Disclose "New Matter" Is A Material Omission That, If Coupled With Intent To Deceive, Would Support A Finding Of Inequitable Conduct

Information that a reasonable examiner would consider important in deciding whether to allow a patent application to issue as a patent is "material." *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1234 (Fed. Cir. 2003) ("Materiality … embraces any information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent." (citation omitted)).

A reasonable examiner would consider the addition of "new matter" to the specification important in deciding whether to allow an application to issue as a patent. *See In re Rasmussen*, 650 F.2d 1212, 1214-15 (C.C.P.A. 1981) ("[35 U.S.C. § 132] prohibits addition of new matter to the original disclosure. It is properly employed as a basis for objection to amendments to the abstract, specifications, or drawings attempting to add new disclosure to that originally presented.").[4]

"Inequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Molins PLC*, 48 F.3d at 1178. The duty of disclosure has its basis in the inventor's duty of candor to the United States Patent and Trademark Office ("Patent Office") during

---

[4] The Federal Circuit is bound by precedents of its predecessor court, the C.C.P.A. *South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (en banc).

prosecution, which is an *ex parte* proceeding. *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1234 (Fed. Cir. 1985). There is a sliding scale between materiality and intent. The more material the omission or misrepresentation, the lower the level of intent required. *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001). Intent need not be proved with direct evidence; it can be inferred from circumstantial evidence. *See id.* at 1274.

As demonstrated below, PowerOasis has not met its burden under the applicable substantive patent law for a dismissal of Wayport's unenforceability counterclaim against the '400 patent. Since PowerOasis' arguments are all fact-based, if the Court draws all reasonable inferences in favor of Wayport, as required by *Rivera-Gomez*, 843 F.2d at 635, then it is clear that PowerOasis cannot support a Rule 12(c) motion to dismiss, especially not at the pleadings stage where no discovery has yet taken place.

### 2. Whether The '400 Patent Contains "New Matter" Is A Factual Question, Not Appropriate For A Determination As A Matter Of Law

PowerOasis' first argument is that the '400 patent does not contain "new matter." (PowerOasis Br. at 8-10). However, even under the case law that PowerOasis itself cites, "new matter" is not "clearly defined" and is entirely fact and context dependent. (*See* PowerOasis Br. at 7, *citing In re Oda*, 443 F.2d 1200, 1203 (C.C.P.A. 1971)). PowerOasis fails to explain how the Court could possibly determine *as a matter of law* as part of a Rule 12(c) motion for judgment on the pleadings that the additional language included in the '400 patent specification is **not** "new matter."

The '658 patent application was filed on November 6, 2001. On the same day that the '658 patent application issued as a patent -- October 15, 2002 -- PowerOasis filed a continuing application based on the '658 patent application. That second application, which issued as the '400 patent, was identified as a "continuation" application of the '658 patent by PowerOasis. It

is undisputed that the '400 patent contained subject matter that was not part of the '658 patent. That new subject matter appears at column 15, lines 15-60, of the '400 patent.

Wayport alleges that the new subject matter in the '400 patent constitutes "new matter," and therefore the '400 patent application should have been called a "continuation-in-part" instead of a "continuation." (Wayport's Counterclaims, ¶ 17). PowerOasis disputes this argument. Given the dispute between the parties on this important fact, there is no possible way that a determination can be made that the admittedly new subject matter in the '400 patent is not "new matter" *as a matter of law* at the Rule 12(c) stage.

### 3. There Is No Support For PowerOasis' Argument That The Examiner Made A "Determination" That The Additional Language Is Not New Matter

PowerOasis' second argument is that the pleadings reveal that the examiner made a "determination" that the '400 patent did not contain "new matter," and that that "determination" is entitled to "great weight." (PowerOasis Br. at 10-11). Assuming *arguendo* that the examiner did make a determination that there was no new matter in the '400 patent, "great weight" does not equal certainty, as required by Rule 12(c) and applicable case law. *See, e.g., Rivera-Gomez*, 843 F.2d at 635. It is certainly a reasonable inference, and a good faith allegation, to plead that the deliberate manner in which PowerOasis presented this new matter to the examiner (by hiding it in an alleged "continuation" application that by definition prohibits any new matter at all) had the effect of deceiving the examiner.

As to the merits of PowerOasis' argument, PowerOasis takes great liberties in arguing that the examiner made a "determination" that the additional language is not new matter. (PowerOasis Br. at 10). PowerOasis does not, nor can it, point to evidence in the '400 patent file history that indicates that the examiner made *any* determination regarding whether or not the new

- 7 -

subject matter constituted new matter. PowerOasis tries to impermissibly equate this absence in the file history with a deliberate action by the examiner.

> **4.    PowerOasis' Argument That Failure To Disclose New Matter Does Not Constitute Inequitable Conduct Overlooks The Critical Intent Element**

PowerOasis' third argument is that "as a matter of law" the intentional inclusion of new matter in a continuation application does not constitute inequitable conduct. (PowerOasis Br. at 11). PowerOasis is wrong. There is no doubt that, if such a deception were perpetrated with the requisite intent to deceive the examiner, it would amount to inequitable conduct. *See Molins PLC*, 48 F.3d at 1178. Wayport has alleged such intent to deceive, and Wayport's allegations on this point are more than sufficient to survive a motion to dismiss, given the extensive law confirming that such intent can be inferred from circumstantial evidence. *See, e.g., Merck & Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1422 (Fed. Cir. 1989); *Klein v. Peterson*, 866 F.2d 412, 415 (Fed. Cir. 1989). PowerOasis completely fails to address the intent to deceive element of Wayport's counterclaim, presumably because it cannot – PowerOasis knows that Wayport has stated the intent element sufficiently to survive a motion for dismissal.

PowerOasis argues that it did not commit inequitable conduct because during prosecution of the '400 patent application it followed the procedure set out in the MPEP, citing from § 201.06(c). (PowerOasis Br. at 11). However, PowerOasis' argument fails to quote the entire relevant section from the MPEP. The sentence immediately preceding the passage quoted in PowerOasis's brief states that *it is the applicant's duty* to review any new specification *to determine that it contains no new matter*.[5] Therefore, even the MPEP, on which PowerOasis

---

[5]    The full sentence states that: "It is the applicant's responsibility to review any new specification or drawings submitted for a continuation or divisional application under 37 CFR 1.53(b) and 37 CFR 1.63(d) to determine that it contains no new matter." MPEP § 201.06(c) (8th rev. ed. May 2004).

relies, states that PowerOasis had a duty to determine that there was no new matter instead of leaving it to the examiner to make that determination.

PowerOasis states that it conducted a "diligent search of the case law" and found "no support whatsoever" for the proposition that there can be inequitable conduct based on the filing of a continuation application containing matter not in the parent application, even if the applicant knew or should have known that the new matter was material to the prosecution. (PowerOasis Br. at 11). A review of the case law, however, supports that a claim for inequitable conduct may be based on the filing of a continuation application containing new matter.

For example, in *KangaROOS U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571 (Fed. Cir. 1985), the Federal Circuit allowed an inequitable conduct claim to proceed where the defendant alleged, on facts similar to those presented here, that the applicant committed inequitable conduct by misrepresenting the patent's priority date by claiming the benefit of an earlier-filed application. *Id.* at 1575. In *KangaROOS*, the applicant allegedly misrepresented that his divisional application was entitled to the priority date of the parent application. *Id.* at 1572-73.[6] Similarly, the applicants here misrepresented the proper priority date of the '400 patent by claiming that the application for the '400 patent was a "continuation" application (which cannot contain new matter and which can properly claim priority to an original application) rather than a "continuation-in-part" application (which may contain new matter and which can only claim priority for claims relying on the new matter as of the filing of the new information).

Accordingly, PowerOasis' request for judgment of dismissal of Wayport's counterclaim of unenforceability of the '400 patent should be denied.

---

[6]  A divisional application, like a continuation application, shares the same specification as the parent application, and takes the priority date of the parent application. *In re Wallach*, 378 F.3d 1330, 1332 (Fed. Cir. 2004); *see also* MPEP § 201.06.

## IV.  CONCLUSION

It is clear from the foregoing that PowerOasis' motion is nothing more than an attempt to truncate discovery on topics that it has itself admitted are fact-based, requiring a totality-of-the-circumstances inquiry.  Accordingly, PowerOasis' motion is inappropriate, and should be summarily denied in its totality.

Respectfully submitted,

**WAYPORT, INC.**

By its attorneys,

/s/ David B. Bassett
William F. Lee (BBO #291960)
David B. Bassett (BBO #551148)
Dominic E. Massa (BBO #564694)
Amr O. Aly (admitted *pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000

Dated: December 10, 2004

## CERTIFICATE OF SERVICE

I, Lauren B. Fletcher, hereby certify that on December 10, 2004, I caused a copy of this foregoing document to be delivered to counsel of record by facsimile and first-class mail.

/s/ Lauren B. Fletcher
Lauren B. Fletcher