IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| POWEROASIS, INC. and<br>POWEROASIS NETWORKS, LLC,<br><br>        Plaintiffs-Counterclaim Defendants,<br><br>v.<br><br>WAYPORT, INC.,<br><br>        Defendant-Counterclaim Plaintiff. | Civil Action No.: 04-12023-RWZ<br><br>Hon. Rya W. Zobel |

**DEFENDANT WAYPORT, INC.'S**
**SECOND AMENDED ANSWER AND COUNTERCLAIMS**

Pursuant to Rules 8, 12, and 13 of the Federal Rules of Civil Procedure and the Local Rules of this Court, defendant Wayport, Inc. ("Wayport") answers the allegations contained in the numbered paragraphs of the Complaint of plaintiffs PowerOasis, Inc. and PowerOasis Networks, LLC (collectively, "PowerOasis") as follows:

Parties

1.    Wayport is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint.

2.    Wayport is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint.

3.    Wayport admits the allegations contained in paragraph 3 of the Complaint.

Jurisdiction and Venue

4.    Wayport admits that the Complaint purports to be an action for patent infringement.

5. No answer is required to the allegations contained in paragraph 5 of the Complaint because they purport to state conclusions of law.

6. No answer is required to the allegations contained in paragraph 6 of the Complaint because they purport to state conclusions of law.

7. No answer is required to the allegations contained in paragraph 7 of the Complaint because they purport to state conclusions of law.

Facts

8. Wayport denies that a copy of U.S. Patent No. 6,466,658 (the "'658 patent") is attached as Appendix A to the Complaint, but admits that the '658 patent states that it was issued by the United States Patent and Trademark Office (the "Patent Office") on October 15, 2002. Wayport is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 8 of the Complaint.

9. Wayport denies that a copy of U.S. Patent No. 6,721,400 (the "'400 patent") is attached as Appendix B to the Complaint, but admits that the '400 patent states that it was issued by the Patent Office on April 13, 2004. Wayport is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 9 of the Complaint.

10. Wayport is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Complaint.

11. Wayport is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the Complaint.

12. Wayport admits that it is a leading provider of wireless and wired Internet access in hotels and airports, among other locations. Wayport denies the remaining allegations contained in paragraph 12 of the Complaint.

13. Wayport admits that it provides wireless and wired Internet access to the public. Wayport denies the remaining allegations contained in paragraph 13 of the Complaint.

14. Wayport admits that it provides wireless and/or wired Internet access in more than twenty hotels in Massachusetts. Wayport denies the remaining allegations contained in paragraph 14 of the Complaint.

15. Wayport admits the allegations contained in paragraph 15 of the Complaint.

16. Wayport admits that it derives revenue from its business activities in Massachusetts. Wayport denies the remaining allegations contained in paragraph 16 of the Complaint.

17. Wayport denies the allegations contained in paragraph 17 of the Complaint.

18. Wayport denies the allegations contained in paragraph 18 of the Complaint.

19. Wayport denies the allegations contained in paragraph 19 of the Complaint.

Unless specifically admitted above, Wayport denies all allegations contained in the Complaint.

## FIRST AFFIRMATIVE DEFENSE

PowerOasis is not entitled to any relief against Wayport because Wayport is not infringing and has not infringed any valid claim of the '658 patent or the '400 patent.

## SECOND AFFIRMATIVE DEFENSE

The claims of the '658 patent and the '400 patent are invalid for failing to meet one or more of the requisite conditions for patentability specified by Title 35 of the United States Code, including without limitation §§ 102, 103, 112, 116 and 256.

## THIRD AFFIRMATIVE DEFENSE

The claims of the '658 patent are unenforceable for two separate and distinct instances of inequitable conduct. Specifically, and as set forth in paragraphs 10 and 20 through 30 of

Wayport's counterclaim, at least one of the inventors and/or the attorneys, agents, and other persons who were substantively involved in preparing and prosecuting the patent application that led to the '658 patent (the "Responsible Persons") committed inequitable conduct before the Patent Office during prosecution of the patent application that led to the '658 patent by failing to disclose to the Patent Office material prior art that was identified by the European Patent Office ("EPO") during prosecution of a related European patent application.  Second, and as set forth in paragraphs 10 and 14, at least one of the Responsible Persons committed inequitable conduct before the Patent Office during prosecution of the patent application that led to the '658 patent by withholding from the Patent Office the true inventorship of the '658 patent.

## FOURTH AFFIRMATIVE DEFENSE

The claims of the '400 patent are unenforceable for three separate and distinct instances of inequitable conduct.  First, and as set forth in paragraphs 11 and 15 through 20 of Wayport's counterclaim, at least one of the inventors and/or the attorneys, agents, and other persons who were substantively involved in preparing and prosecuting the patent application that led to the '400 patent (also the "Responsible Persons") committed inequitable conduct before the Patent Office during prosecution of the patent application that led to the '400 patent by intentionally misrepresenting to the Patent Office that the patent application contained no new matter.  Second, and as set forth in paragraphs 11, 21 through 29, and 32 through 34 of Wayport's counterclaim, at least one of the Responsible Persons committed inequitable before the Patent Office during prosecution of the patent application that led to the '400 patent by failing to disclose to the Patent Office material prior art that was identified by the EPO during prosecution of a related European patent application.  Third, and as set forth in paragraphs 11 and 14, at least one of the Responsible Persons committed inequitable conduct before the Patent

Office during prosecution of the patent application that led to the '400 patent by withholding from the Patent Office the true inventorship of the '400 patent.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

Wayport for its counterclaim against PowerOasis alleges as follows:

### Jurisdiction

1. This is a counterclaim for a declaration of noninfringement, invalidity, and unenforceability of the claims of the '658 patent and the '400 patent. This Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. §§ 1331, 1338, and 2201.

2. An actual case or controversy exists between the parties concerning the infringement, validity, and enforceability of the claims of the '658 patent and the '400 patent and that controversy is ripe for adjudication by this Court.

### Parties

3. The plaintiff-in-counterclaim Wayport is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Austin, Texas.

4. The defendant-in-counterclaim PowerOasis, Inc. is, on information and belief, a corporation organized and existing under the laws of the State of New Hampshire, with its principal place of business in Nashua, New Hampshire.

5. The defendant-in-counterclaim PowerOasis Networks, LLC is, on information and belief, a limited liability corporation organized and existing under the laws of the State of New Hampshire, with its principal place of business in Nashua, New Hampshire.

### Noninfringement, Invalidity, and Unenforceability

6. Wayport has not infringed and is not infringing any claim of the '658 patent.

7. The claims of the '658 patent are invalid for failing to meet one or more of the requisite conditions for patentability specified by Title 35 of the United States Code, including without limitation §§ 102, 103, 112, 116 and 256.

8. Wayport has not infringed and is not infringing any claim of the '400 patent.

9. The claims of the '400 patent are invalid for failing to meet one or more of the requisite conditions for patentability specified by Title 35 of the United States Code, including without limitation §§ 102, 103, 112, 116 and 256.

10. The claims of the '658 patent are unenforceable for inequitable conduct. One or more of the inventors and/or the attorneys, agents, and other persons who were substantively involved in preparing and prosecuting the patent application that led to the '658 patent (the "Responsible Persons") committed inequitable conduct before the Patent Office during prosecution of the patent application that led to the '658 patent by intentionally withholding and failing to disclose material prior art and true inventorship to the Patent Office.

11. The claims of the '400 patent are unenforceable for inequitable conduct. One or more of the inventors and/or the attorneys, agents, and other persons who were substantively involved in preparing and prosecuting the patent application that led to the '400 patent (also the "Responsible Persons") committed inequitable conduct before the Patent Office during prosecution of the patent application that led to the '400 patent by intentionally misrepresenting to the Patent Office that the patent application contained no new matter and by intentionally withholding and failing to disclose material prior art and true inventorship to the Patent Office.

12. On November 6, 2001, PowerOasis filed patent application Serial No. 09/985,930 (the "'930 application" or the "'658 patent application") with the Patent Office. The '930 application issued as the '658 patent on October 15, 2002.

13. On October 15, 2002, PowerOasis filed patent application Serial No. 10/270,108 (the "'108 application" or the "'400 patent application") with the Patent Office as a continuation of the '930 application. The '108 application issued as the '400 patent on April 13, 2004.

14. Both the '658 patent and the '400 patent applications named two individuals as inventors, Mr. Charles C. Schelberg and Mr. Thomas M. Duff. However, the parent patent applications of these two applications had as named inventors Messrs. Schelberg and Duff as well as a third person, Mr. Stephen Condodemetraky. PowerOasis committed inequitable conduct by intentionally failing to disclose to the Patent Office the identity of Mr. Condodemtraky as an inventor of the '658 patent and the '400 patent applications.

15. The '400 patent application contained subject matter that was not part of the '658 patent application. The new subject matter can be found, without limitation, at column 15 of the '400 patent, where the '400 patent states that the "payment mechanism," the "customer interface," the "electronic circuit for determining when the transaction is complete," the "telecommunications channel access circuit," and the "switchable circuit" were broadly described in the applicants' earliest application and further states what those terms were intended to include in the applicants' earliest application.

16. One or more of the Responsible Persons knew or should have known that the addition of new matter was material to the prosecution of the '400 patent application under Title 35 of the United States Code, including without limitation § 132, and the Manual of Patent Examining Procedure, including without limitation § 201.07.

17. In light of Title 35 of the United States Code, including without limitation § 132, and the Manual of Patent Examining Procedure, including without limitation § 201.07, there is a substantial likelihood that a reasonable patent examiner would have considered the addition of

new matter as highly material in deciding whether to allow the '400 patent application to issue as a patent.

18. On information and belief, notwithstanding their knowledge and awareness of the addition of new matter and the fact that it was material to the claims of the '400 patent application, one or more of the Responsible Persons intentionally failed to disclose the addition of new matter to the Patent Office.

19. On information and belief, notwithstanding their knowledge and awareness of the addition of new matter and the fact that it was material to the claims of the '400 patent application, one or more of the Responsible Persons intentionally misrepresented to the Patent Office that no new matter was added to the '400 patent application by filing the '400 patent application as a "continuation" rather than as a "continuation-in-part" of the '658 patent application.

20. On information and belief, one or more of the Responsible Persons intentionally failed to disclose the addition of new matter and misrepresented that no new matter was being added to the '400 patent application for the purpose of procuring issuance of the '400 patent.

21. On February 6, 1998 PowerOasis (formerly known as PowerTel, Inc.) filed a European patent application that was assigned No. 98102108.2 (the "EP '108.2 Application") with the European Patent Office ("EPO"). The EP '108.2 Application is related to the '658 patent and '400 patent applications because it takes priority from, and is the counterpart of, U.S. Patent Appl. Serial No. 08/796,562 ("the '562 Application"), which is a parent application of the '658 patent and '400 patent applications.

22. On November 4, 1999, before initiating prosecution in the United States of the '658 patent and '400 patent applications, upon information and belief, PowerOasis received from

the EPO a European Search Report in connection with the prosecution of the EP '108.2 Application. The European Search Report identified six references that the EPO considered to be relevant to prosecution of the EP '108.2 Application, including one "X" reference which the EPO considered as "particularly relevant if taken alone," and two "Y" references which the EPO considered as "particularly relevant if combined with another document of the same category." All six references have publication dates that make them "prior art" under United States patent laws. PowerOasis had an obligation to disclose these six references to the Patent Office in connection with the prosecution of the '658 patent and '400 patent applications because it learned of them prior to the filing of the '658 patent and '400 patent applications and the claims of the '658 patent and '400 patent applications are highly similar to the claims of the EP '108.2 application. In failing to do so, PowerOasis committed inequitable conduct.

   23. On November 7, 2002, while the '400 patent application was being prosecuted in the Patent Office, the EPO issued a Communication that cited four references, including a new reference that was not previously cited in the European Search Report, and rejected independent claim 1 as "not new" based on the disclosure in EP-A-0 616 460 ("the "EP '460 patent"). The EP '460 patent was one of the six references that was previously cited by the EPO in the European Search Report.

   24. The EPO considered EP '460 patent as disclosing: "a vending machine (Fig. 1) for vending telecommunications channel access to a customer, said vending machine comprising: [1] an electronic payment mechanism (Fig. 1-23) for receiving payment information from the customer; [2] a display (Fig. 1-11) for indicating the status of said vending machine; [3] an electronic circuit (Fig. 1-11) for determining when the vending transaction is completed; [4] a switchable telecommunications channel access circuit (Fig. 1-22) adapted to be connected to at

least one external telecommunications channel (Fig. 1-20) for enabling access to the at least one external telecommunications channel at the beginning of the vending transaction (column 8 lines 15-18) and disabling access at the end of the vending transaction (column 9 lines 24-26); [5] a telecommunications channel access connector (Fig. 1-15) connected to said switchable telecommunications channel access circuit for enabling connection to an external telecommunications device of the customer (column 7 lines 41-42); and [6] a control unit (Fig. 1-10) having a storage device for storing the payment information received from the customer and for controlling said electronic circuit and said switchable telecommunications channel access circuit." All of these six claim limitations are also present in independent claim 1 of the '658 patent application, thereby clearly demonstrating the materiality of EP '460 to prosecution of the '400 patent application in the Patent Office.

25.     On May 12, 2003, PowerOasis responded to the November 7, 2002 Office Action, and instead of arguing that the rejection is without merit, PowerOasis acquiesced to the examiner's arguments and amended the claims of the EP '108.2 application to overcome the rejection based on the EP '460 patent. Therefore PowerOasis admitted materiality of the EP '460 patent when in its Response it admitted that EP '460 patent disclosed the claim limitations identified by the EPO in the November 7, 2002 Communication.

26.     PowerOasis did not disclose the EP '460 patent to the Patent Office during prosecution of the '400 patent application despite the fact that it was raised by the EPO twice, it served as the basis of the EPO's rejection of claim 1 of EP '108.2 application (which is nearly identical to claim 1 of the '400 patent application), and PowerOasis amended claim 1 of EP '108.2 application to overcome that rejection.

27. Since the 'EP '460 patent is in French and the May 12, 2003 Response by PowerOasis was in English, based on information and belief, PowerOasis had within its possession, custody or control an English translation or partial translation of the 'EP '460 patent and failed to discharge its duty of disclosure that is required by 37 C.F.R. § 1.98. PowerOasis therefore committed inequitable conduct by failing to disclose the English translation of 'EP '460 to the Patent Office during prosecution of the '400 patent application.

28. The EP '108.2 application subsequently issued as European Patent No. EP 0862151 B1 on December 8, 2004.

29. One or more of the Responsible Persons knew or should have known that the six references identified in the European Search Report were material to the prosecution of the '658 patent and '400 patent applications, which issued as the '658 and '400 patents, respectively.

30. In light of 37 C.F.R. § 1.56 and MPEP § 2001.06(a), there is a substantial likelihood that a reasonable patent examiner would have considered the six references cited in the European Search Report as highly material in deciding whether to allow the '658 patent and '400 patent applications to issue as patents.

31. On information and belief, notwithstanding their knowledge and awareness of the six references cited in the European Search Report and the fact that they were material to the claims of the '658 patent and '400 patent applications, one or more of the Responsible Persons intentionally withheld and failed to disclose the six references cited in the European Search Report to the Patent Office during the prosecution of the '658 patent and '400 patent applications.

32. One or more of the Responsible Persons knew or should have known that the EP '460 patent, which was used as a basis for rejecting claim 1 of the EP '108.2 Application, was

material to the prosecution of the '400 patent application. Claim 1 of the EP '108.2 Application is nearly identical to claim 1 of the '400 patent application.

33. In light of 37 CFR § 1.56 and MPEP § 2001.06(a), there is a substantial likelihood that a reasonable patent examiner would have considered the EP '460 patent as highly material in deciding whether to allow the '400 patent application to issue as a patent.

34. On information and belief, notwithstanding their knowledge and awareness of the EP '460 patent and the fact that it was material to the claims of the '400 patent application, one or more of the Responsible Persons intentionally withheld and failed to disclose the EP '460 patent, and any English translation thereof that was within PowerOasis' possession, custody or control, to the Patent Office during prosecution of the '400 patent application.

WHEREFORE, Wayport requests that this Court enter a judgment in its favor and against PowerOasis as follows:

Dismiss the Complaint in its entirety, with prejudice;

Enter judgment in favor of Wayport and against PowerOasis;

Declare that Wayport is not infringing and has not infringed any claim of the '658 patent or the '400 patent;

Declare that the claims of the '658 patent and the '400 patent are invalid, void, and/or unenforceable against Wayport;

Award Wayport its costs (including expert fees), disbursements, and reasonable attorney fees incurred in this action, pursuant to 35 U.S.C. § 285; and

Grant such further relief to Wayport as is just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Wayport demands a trial by jury on all issues so triable.

Respectfully submitted,

WAYPORT, INC.

By its attorneys

/s/ David B. Bassett
William F. Lee (BBO #291960)
David B. Bassett (BBO #551148)
Dominic E. Massa (BBO #564694)
Amr O. Aly (admitted *pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
Email: david.bassett@wilmerhale.com

Dated: June 1, 2005

## Certificate of Service

    I, Benjamin M. Stern, hereby certify that on June 1, 2005, I caused a copy of the foregoing document to be delivered to counsel of record via the Court's electronic filing system.

                              /s/ Benjamin M. Stern
                              Benjamin M. Stern