**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

POWEROASIS, INC. and )
POWEROASIS NETWORKS, LLC )
)
      **Plaintiffs,** )
)
v. )     **Civil Action No. 04-12023-RWZ**
)
WAYPORT, INC. )
)
      **Defendant.** )

## PLAINTIFFS' MEMORANDUM ON CLAIM CONSTRUCTION

Pursuant to the Revised Discovery Plan, as amended, Plaintiffs PowerOasis, Inc. and

PowerOasis Networks, LLC ("PowerOasis") request that the Court construe the claims of the

patents in the manner and for the reasons set forth below.

### A.    The Claims

PowerOasis asserts claims 15, 18, 31, 35, 38, 40, and 49 of U.S. Patents Nos. 6,466,658

(the "'658 Patent")[1] and 6,721,400[2] (the "'400 patent") against Wayport. Each of those claims

depends from claim 1 in each patent, which must be construed in addition to the asserted

dependent claims. The claims to be construed are set forth in the following table. PowerOasis

and Wayport disagree as to the proper construction of the highlighted words or phrases:

| Claim Limitation No. | '658 Patent | '400 Patent |
|---|---|---|
| Preamble | A *vending machine for vending telecommunications channel access to a customer, said vending machine comprising:* | A *vending machine for vending telecommunications channel access to a customer, said vending machine comprising:* |

---

[1] A copy of US Patent No. 6,466,658 is attached hereto as Exhibit A.
[2] A copy of US Patent No. 6,721,400 is attached hereto as Exhibit B.

| | | |
|---|---|---|
| 1.a. | a *payment mechanism* for receiving payment from the customer; | a *payment mechanism* for obtaining information from the customer to initiate a vending transaction; |
| 1.b. | a *customer interface* for indicating the status of said vending machine; | a *customer interface* for indicating the status of said vending machine; |
| 1.c. | an electronic circuit for determining when the *vending transaction* is completed; | an electronic circuit for determining when the *vending transaction* is completed; |
| 1.d. | a telecommunications channel access circuit adapted to be connected to at least one external telecommunications channel for *enabling access* to the at least one external telecommunications channel *at the beginning of a vending transaction and disabling access at the end of the vending transaction;* | a telecommunications channel access circuit adapted to be connected to at least one external telecommunications channel for *enabling access* to the at least one external telecommunications channel *at the beginning of a vending transaction and disabling access at the end of the vending transaction;* |
| 1.e. | a *telecommunications channel access connector* connected to said telecommunications channel access circuit for enabling connection to an external telecommunications device of the customer; and | a *telecommunications channel access connector* connected to said telecommunications channel access circuit for enabling connection to an external telecommunications device of the customer; and |
| 1.f. | a control unit having a storage device for storing payment information received from the customer and for controlling said electronic circuit and said telecommunications channel access circuit. | a control unit having a device for receiving payment information from the customer and for controlling said electronic circuit and said telecommunications channel access circuit. |
| 15. | A vending machine as claimed in claim 1, wherein said *customer interface comprises a mechanism that interfaces with software supplied by the customer.* | A vending machine as claimed in claim 1, wherein said *customer interface comprises a mechanism that interfaces with software supplied by the customer.* |

| 18. | A vending machine as claimed in claim 1, wherein said telecommunications channel access connector comprises a high bandwidth channel connector. | A vending machine as claimed in claim 1, wherein said telecommunications channel access connector comprises a high bandwidth channel connector. |
|---|---|---|
| 31. | A vending machine as claimed in claim 1, wherein said telecommunications channel access circuit is ==adapted to be connected to a direct Internet connection via an Internet Service Provider selected by the vending machine==. | A vending machine as claimed in claim 1, wherein said telecommunications channel access circuit is ==adapted to be connected to a direct Internet connection via an Internet Service Provider selected by the vending machine==. |
| 35. | A vending machine as claimed in claim 1, wherein said telecommunications channel access connector comprises a transceiver to connect wirelessly to an external telecommunications device of the customer. | A vending machine as claimed in claim 1, wherein said telecommunications channel access connector comprises a transceiver to connect wirelessly to an external telecommunications device of the customer. |
| 38. | A vending machine as claimed in claim 1, wherein said control unit is ==located remote from said vending machine==. | A vending machine as claimed in claim 1, wherein said control unit is ==located remote from said vending machine==. |
| 40. | A vending machine as claimed in claim 1, wherein said control unit further comprises circuitry for controlling a plurality of vending machines. | A vending machine as claimed in claim 1, wherein said control unit further comprises circuitry for controlling a plurality of vending machines. |
| 49. | A vending machine as claimed in claim 1, wherein said payment mechanism comprises a mechanism that interfaces with software resident on equipment of the customer. | A vending machine as claimed in claim 1, wherein said payment mechanism comprises a mechanism that interfaces with software resident on equipment of the customer. |

**B.      The Law of Claim Construction**

The decision of the Federal Circuit in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) articulates the standards for claim construction.

Claim construction starts with the words of the claims, which define the patented invention. *Id*. at 1312. The claims themselves provide substantial guidance as to the meaning of particular claim terms, including the context in which a term is used in the asserted claim and the terminology of other claims in the patent. *Id*. at 1314-15. The words of the claims are generally given their ordinary and customary meaning, which is the meaning that the claim term would have to a person of ordinary skill in the art at the time of the effective filing date of the patent invention. *Id*. at 1312-14; *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996). Inventors are typically persons skilled in the field of the invention. *Phillips*, 415 F.3d at 1314. The person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which it appears, but also in the context of the entire patent, including the specification. *Id*.

In cases where the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent, claim construction "involves little more than the application of the widely accepted meaning of commonly understood words." *Id*. at 1314. Where the meaning of the claim term is not "immediately apparent," the court looks to the sources available to the public that show what a person of skill in the art would have understood the disputed claim language to mean. *Id*. at 1314. Of those sources, the specification is "the single best guide to the meaning of a disputed term." *Id*. at 1315. The court should also consider the patent's prosecution history. *Id*. at 1317.

The specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such case, the inventor's lexicography governs. *Id*. at 1316.

Extrinsic evidence, such as expert and inventor testimony, dictionaries, and learned treatises, may be admitted and used by the district court in its sound discretion, but such extrinsic evidence is less significant and less reliable than the intrinsic record in determining the meaning of claim language, and "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id*. at 1319.

While the specification is "always highly relevant" to claim construction, *id*. at 1315, the district court must "avoid the danger of reading limitations from the specification into the claims." Although the specification often describes very specific embodiments of the invention, the Federal Circuit has "repeatedly warned against confining the claims to those embodiments." In addition, it has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Id*. at 1323.

### C.     Claim Construction

For the convenience of the Court, PowerOasis presents its argument for the proposed construction of each claim and element thereof in tabular form listing the ordinary and accustomed meaning to one of ordinary skill in the art and the intrinsic and extrinsic evidence supporting that meaning. In addition, where appropriate PowerOasis provides additional argument following each proposed construction.

## The Preamble of Claim 1

| '658 Patent | '400 Patent |
|---|---|
| *A vending machine for vending telecommunications channel access to a customer, said vending machine comprising:* | *A vending machine for vending telecommunications channel access to a customer, said vending machine comprising:* |

**Proposed Construction**:

| Ordinary and Accustomed Meaning to One of Ordinary Skill in the Art | Supporting Evidence |
|---|---|
| The preamble does not constitute a limitation.<br><br>"Vending machine for vending telecommunications channel access to a customer" means a system and apparatus for vending telecommunications channel access to a customer. The components of the system may be, but do not have to be, collocated in a unitary physical structure. | '658/'400 Abstract and Fig. 4, not requiring all units, circuits and interface to be in a unitary box;<br><br>"It is possible to modify this and require the central control unit 106 to contact a central computer and obtain payment approval before allowing a transaction to begin." ('658 c. 7, l. 39-42; '400 c. 7, l. 44-47).<br><br>"[T]his invention is not limited to a fixed location." ('658 c. 4, l. 23; '400, c. 4, l. 25).<br><br>"[A]lmost any combination of functional components of the vending machine could be moved to a location remote from the vending machine." ('658 c. 4, l. 30-33; '400 c. 4, l. 33-35).<br><br>Examiner's Statement of Reasons for Allowance: "None of the art of record suggest nor teach *the system and method of vending telecommunications channel access and power to a customer* having the physical combination of elements and steps as set forth in independent claim 1."<br><br>Time Magazine article dated October 7, 1996 entitled, "Cyber Vending Machine."<br><br>Testimony of inventor Charles Schelberg. |

The preamble of Claim 1 of each patent states a descriptive name for the invention and describes its intended use or purpose ("a vending machine for vending telecommunications channel access to a customer").

A preamble does not usually constitute a limitation of a claim, but it can constitute a limitation when it must be referred to in order to gain a full understanding of the invention being claimed. *Catalina Marketing Int'l, Inc. v. Coolsavings.com*, 289 F.3d 801, 808 (Fed. Cir. 2002). If the preamble merely states the intended use or purpose of the invention, it does not limit the scope of the claim. *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc*. 381 F.3d 1111, 1118 (Fed. Cir. 2005); *C.R. Bard, Inc. v. M3 Sys.,Inc*., 157 F.3d 1340 (Fed. Cir.1998). A phrase in the preamble providing a descriptive name to the set of limitations in the body of the claim that completely set forth the invention does not constitute a claim limitation. *IMS Technology, Inc. v. Haas Automation, Inc.,* 206 F.3d 1422, 1434 (Fed. Cir. 2000); *Intirtool, Ltd v. Texar Corp*; 369 F.3d 1289, 1295 (Fed. Cir. 2004) (District court erred by interpreting preamble of claim stating, "hand-held pliers for simultaneously punching and connecting overlapping sheet metal such as at the corners of overlapping ceiling tile grids," as a limitation of the invention). However, when the preamble serves to "give life, meaning and validity" to the claim and to define the invention, it constitutes a limitation of the claim. *Pitney Bowes, Inc. v. Hewlett-Packard Co*., 182 F.3d 1298 (Fed. Cir. 2000).

Under these standards, the preamble to claim 1 of the '658 and '400 patents does not constitute a limitation. The preamble states that the "vending machine for vending telecommunications channel access to a customer" "comprises" limitations [a] through [f]. Under Federal Circuit law, "comprising" means "including, but not limited to." *Moleculon Research Corp v. CBS, Inc*., 793 F.2d 1261 (Fed. Cir. 1986)." Limitations [a] through [f] define

a complete invention for vending telecommunications channel access to a customer.  The phrase in the preamble, "vending machine for vending[3] telecommunications channel access to a customer" is merely a descriptive name for the combination of elements set forth in limitations [a] through [f] of the claim and identifying the function of "vending telecommunications channel access to a customer" accomplished by a system and apparatus having the features stated in those limitations.

In *Intirtool, Ltd v. Texar Corp*., *supra*, the Federal Circuit held that the preamble in a patent claim ("[a] hand-held punch pliers for simultaneously punching and connecting overlapping sheet metal such as at the corners of overlapping ceiling tile grids, comprising:") was not a limitation.  The Federal Circuit applied the test that, "if the body of the claim describes a structurally complete invention such that the deletion of the preamble phrase does not affect the structure or steps of the claimed invention, the preamble is generally not limiting unless there is clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art."  *Id*. at 1295.  The Federal Circuit observed that, "the claimed tool was described in claim 1 in complete and exacting detail," and "the preamble does not recite any additional structure or steps underscored as important by the specification."  *Id*.  The Federal Circuit did not find in the prosecution history "clear reliance specifically on the preamble, rather than on the structural limitations set forth in the body of the claim, which if present might provide a basis for transforming the preamble into a claim limitation."  *Id*.

The same reasoning applies to the preamble of the '658 and '400 patents.  Deleting the term "vending machine" and substituting another term such as "system and apparatus" would

---

[3] The specification does not provide a special meaning for the term "vending," which has its ordinary dictionary meaning of "selling."  Merriam-Webster's Collegiate Dictionary (10th Ed. 1993, "v.t.: to dispose of something by sale: sell").

have no effect on the scope of the invention as described in limitations [a] through [f] of Claim 1. As in *Intirtool*, "the preamble adds nothing to this highly detailed claim and thus cannot be considered to add 'life, meaning and vitality' to it." *Id*.

The specification and prosecution history support the conclusion that the preamble is not a limitation. Although it uses the term "vending machine" many times, the specification does not "underscore as important" any "additional structure" that is recited in the preamble. *Id*. In other words, the specification does not provide that, in addition to having the features of limitations [a] through [f], the claimed invention has some additional structure or features not set forth in those limitations. Likewise the prosecution history does not reveal any "reliance on the preamble during prosecution to distinguish the claimed invention from the prior art." *Id*. at 1295. Indeed, the original parent patent to the '658 and '400 patents, U.S. Patent No. 5,812,643[4], was allowed by the examiner on the basis of an interview, and the examiner's statement of reasons for allowance makes no specific reference to the preamble or to the term "vending machine." Rather, the examiner merely states, "[N]one of the art of record suggest nor teach the system and method of vending telecommunications channel access and power to a customer having the physical combination of elements and steps as set forth in independent claims 1, 23 and 24."[5] For these reasons, the preamble is not a limitation of Claim 1 of either the '658 patent or the '400 patent.[6]

---

[4] A copy of US Patent No. 5,812,643, is attached hereto as Exhibit C.
[5] A copy of the Notice of Allowability issued March 31, 1998, is attached hereto as Exhibit D.
[6] Wayport may argue that the preamble is a limitation because limitation 1[b] requires "a display for indicating the status of said vending machine," and that the preamble must be a limitation to provide an antecedent basis for the term "said vending machine." See, e.g., *Goldenberg v. Cytogen, Inc*., 373 F.3d 1158, 1164, n.2 (Fed. Cir. 2004). However, this rule applies where the preamble provides information about the invention not present in the body of the claim. For example, in *Goldenberg* the body of the claim contained the words "said marker substance," and the preamble added the additional information, "intracellular marker substance." Where the preamble merely states a name for the invention, as in the present case, it adds no additional information about the invention. "Said vending machine" does indeed refer to the "vending machine" of the preamble, but the preamble is not a limitation because it is nothing more than a name and a description of the use and purpose of the invention.

Even if one were to deem the preamble to be a limitation of Claim 1, the patented invention would still be the same, i.e., the invention would consist of the combination of the components that perform the functions stated in limitations [a] through [f] of each patent. It is apparent from the wording of the preamble itself that the term "vending machine" is not being used in the commonly used sense as "a coin-operated machine for selling merchandise." *Merriam-Webster's Collegiate Dictionary (10th Ed. 1993).* The preamble states the purpose of the "vending machine" to be "vending telecommunications access to a customer," rather than vending merchandise.

Under *Phillips*, one must turn to the language of the specification to see how the term "vending machine for vending telecommunications access to a customer" is used by the patentee. The language in Claim 1 of the '658 and '400 patents, and throughout the specification, is clear that what is being vended is "access to . . . a telecommunications channel or channels . . . for a fee." ('658 patent, col. 2, lines 39-41; '400 patent, col. 2, lines 43-45). Thus, the patented invention does not sell "merchandise" in the traditional sense. Moreover, the invention does not require the use of coins or currency. The specification states that "the customer provides payment in electronic form (*e.g.*, credit card, debit card, smart card, or other forms of electronic or magnetic currency devices) or, optionally, currency." ('658 patent, col. 2, lines 47-50; '400 patent, col. 2, lines 51-54). Payment also can be made through software present on the user's laptop computer, or even after the transaction following identification and authentication of the user. ('658 patent, col. 2, lines 50-57; '400 patent, col. 2, lines 54-61). This is reflected in the language of Claim 1 of the '400 patent, which refers to "a payment mechanism for *obtaining information from the customer* to initiate a vending transaction."

The patents also make it clear that the invention is not limited to an ordinary stand-alone type of vending machine. The "Summary of the Invention" provides a functional description of what the invention provides:

> This invention provides access to one or more utilities after the customer provides payment in electronic form . . . The customer selects which utilities or services they require, typically by just connecting to the appropriate connector (also know[sic] as outlet, receptacle, or plug) either through physical means or through wireless connections such as infrared. The transaction then begins when some form of payment or user identification is received.

('658 patent, col. 2, lines 46 – 65; '400 patent, col. 2, lines 50-67).

The functional components of the invention can be remote from each other and networked together:

> Almost any combination of functional components of the vending machine could be removed to a location remote from the machine. This could be accomplished, for example, by networking a cluster of machines to a server either on site or at a remote location.

('658 patent, col. 4, lines 30-34; see also, col. 11, lines 19-29; '400 patent, col. 4, lines 33-38; see also, col. 11, lines 22-32).

When it describes a preferred embodiment for a "telecommunications vending machine," the specification refers, not to a single, stand-alone device, but to a block diagram (Fig. 4), including blocks representing the various components and functions that have to be present to provide telecommunications channel access for a fee to a customer. ('658 patent, col. 10, lines 43-50; '400 patent, col. 10, lines 45-54). There is no requirement that the equipment providing those functions be combined into one single device.

In both the specification of the original parent '643 patent, and that of the '658 and '400 patents, the patentee makes it clear that the invention is not limited to a conventional unitary vending machine, such as a "Coke machine." All three specifications provide that, "[T]his

invention is not limited to a fixed location," ('643, c. 3, l. 26; '658, c. 4, l. 22; '400, c. 4, l. 25) and that, "It is possible to . . . require the central control unit 106 to contact the central computer to obtain payment approval before allowing a transaction to begin."  ('643, c. 5, l. 47-50; '658, c. 7, l. 39-42; '400, c. 7, l. 44-47).

As observed above, the patent examiner referred to the invention as a "system and method of vending telecommunications access" when allowing the parent '643 patent. PowerOasis submits that the examiner's terminology is an appropriate construction of the term "vending machine" as it appears in the preamble.

Finally, the extrinsic evidence supports such a construction.  Mr. Charles Schelberg, co-inventor of each of the PowerOasis patents, is expected to testify that he maintained a notebook containing his notes and memoranda at the time he initially conceived of the invention that was patented under the '643 patent.  He will testify that he included in his notebook a copy of an article that was published in *Time Magazine* dated October 7, 1996.  It is entitled "Cyber Vending Machine," and has an illustration entitled "The Internet Vending Machine."[7]  Mr. Schelberg will testify that, when using the term "vending machine" in what became the parent '643 patent, and in the patents in suit, he used the term "vending machine" in the same sense as it was used in the *Time Magazine* article of October 7, 1996.  Under that usage, the term "vending machine" is used broadly to mean a system and related apparatus for providing a product or service to a customer in exchange for payment, and includes a system in which various components can be distributed in diverse locations, rather than located in a single device.

---

[7] A copy of the article entitled "Cyber Vending Machine," published in *Time Magazine*, October 7, 1996, is attached hereto as Exhibit E.

**Claim 1[a]**

| '658 Patent | '400 Patent |
|---|---|
| ==a payment mechanism== for receiving payment from the customer; | a ==payment mechanism== for obtaining information from the customer to initiate a vending transaction; |

**Proposed Construction:**

| Ordinary and Accustomed Meaning to One of Ordinary Skill in the Art | Supporting Evidence |
|---|---|
| "Payment" means paying money in some form.<br><br>"Mechanism" means machinery or process for achieving a result.<br><br>"Vending transaction" is a transaction by which something is provided to the customer in exchange for payment.<br><br>The remaining words have their ordinary meanings. | The specification discloses a variety of ways for obtaining payment including remote payment authorization and electronic payment.<br><br>"This invention provides access to one or more utilities after the customer provides payment in electronic form (e.g., credit card, debit card, smart card, or other forms of electronic or magnetic currency devices) or, optionally, currency. Alternatively, no physical payment method is required, and payment is carried out through software that is present in the user's laptop or other device." ('658, c. 2, l. 46-52; '400, c. 2. l. 50-56).<br><br>"[N]o physical payment method need be included in the vending machine." ('658, c. 3, l. 21; '400, c. 3, l. 23).<br><br>"[A]lmost any combination of functional components of the vending machine could be moved to a location remote from the vending machine." ('658, c. 4, l. 30; '400, c. 4, l. 33).<br><br>Testimony of Charles Schelberg. |

The specification does not define "payment mechanism" narrowly, but makes it clear that

the payment can be made electronically, that "no physical payment method is required," ('658, c.

2, l. 50-51; '400, c. 2, l. 54-55), and that "no physical payment method need be included in the vending machine." ('658, c. 3, l. 19-20; '400, c. 3, l. 23-24).

<u>**Claim 1[b]**</u>

| **'658 Patent** | **'400 Patent** |
|---|---|
| a *customer interface for indicating the status of said vending machine;* | a *customer interface for indicating the status of said vending machine;* |

**Proposed Construction:**

| **Ordinary and Accustomed Meaning to One of Ordinary Skill in the Art** | **Supporting Evidence** |
|---|---|
| An interface is the place where two different systems meet and interact with each other. An example is a GUI (graphic user interface, the display on a computer screen).<br><br>"Said vending machine" refers to "a vending machine for vending telecommunications access to a customer" as stated in the preamble. | The specification discloses that the customer interface may be on the customer's laptop computer.<br><br>"This microprocessor also communicates with the customer via a user interface to provide details on the transaction. The user interface is not particularly limited and need not even include a visual display on the vending machine." ('658, c. 3, l. 1-5; '400, c. 3, l. 5-8).<br><br>"Alternatively, the user interface can be present inside or uploaded to the user's laptop thereby obviating the need for an interface within the vending machine unit." (c. 658, l. 15-18; '400, c. 6, l. 20-23).<br><br>Testimony of Charles Schelberg. |

<u>**Claim 1[c]**</u>

| **'658 Patent** | **'400 Patent** |
|---|---|
| an electronic circuit for determining when the *vending transaction* is completed; | an electronic circuit for determining when the *vending transaction* is completed; |

**Proposed Construction:**

| Ordinary and Accustomed Meaning to One of Ordinary Skill in the Art | Supporting Evidence |
|---|---|
| An "electronic circuit" is an interconnection of electrical elements and electronic devices.<br><br>"Vending transaction" is the transaction by which telecommunications channel access is provided to the customer in exchange for payment by or on account of the customer.<br><br>"[W]hen the vending transaction is completed" means when the customer's connection to the vending machine has been terminated or the customer's payment has been exhausted. | This construction is based on the ordinary meanings of the words of the limitation.<br><br>"An object of this invention is to provide access to electrical power, a telecommunications channel or channels and/or other utilities or services for a fee. The customer determines the method of payment, the length of time of access and which of the utilities or services to utilize. The fee is based on the length of time of access and which utilities or services are accessed." ('658, c. 2, l. 39-45; '400, c. 2, l. 43-49).<br><br>"The transaction ends when the customer disconnects from all of the connectors or otherwise indicates that the customer is finished." ('658 c.2, l. 63-65; '400, c. 2, l. 67-c. 3, l. 2).<br><br>Testimony of Charles Schelberg. |

## Claim 1[d]

| '658 Patent | '400 Patent |
|---|---|
| *a telecommunications channel access circuit adapted to be connected to at least one external telecommunications channel for enabling access to the at least one external telecommunications channel at the beginning of a vending transaction and disabling access at the end of the vending transaction;* | *a telecommunications channel access circuit adapted to be connected to at least one external telecommunications channel for enabling access to the at least one external telecommunications channel at the beginning of a vending transaction and disabling access at the end of the vending transaction;* |

**Proposed Construction:**

| Ordinary and Accustomed Meaning to One of Ordinary Skill in the Art | Supporting Evidence |
|---|---|
| A "telecommunications channel" is a pathway or route on which a telecommunications | "Vending telecommunications channel access includes providing access to the high speed |

| |
|---|---|
| signal travels. Coaxial cables, fiber optics, microwave signals, telephone lines, wireless media, and satellite communications all serve as telecommunications channels.<br><br>An "access circuit" is a circuit providing access.<br><br>"Adapted to be connected" means having a physical configuration enabling connection to be made.<br><br>"External telecommunications channel" means an outside channel such as a T1 line, telephone line, or other channel on which a telecommunications signal is carried.<br><br>"For enabling access to the at least one external telecommunications channel" means for the purpose of activating the telecommunications channel so telecommunications can take place.<br><br>"Disabling access" means deactivating the telecommunications channel. | data channels that are emerging for computer use as well as the typical telephone networks and cellular lines. These various telecommunications channels, which include ISDN, T1, T3, cable, SONET, xDSL, broadband, baseband, and other channels, have not previously been available for a fee in public and semi-public locations." ('658, c. 3, l. 39-47; '400, c. 3, l. 43-50).<br><br>"The transaction then begins when some form of payment or user identification is received." ('658 c. 2, l 632-3; '400 c. 2 l. 65-66).<br><br>"The transaction ends when the customer disconnects from all of the connectors or otherwise indicates that the customer is finished." ('658 c.2, l. 63-65; '400, c. 2, l. 67-c. 3, l. 2).<br><br>Testimony of Charles Schelberg. |

## Claim 1[e]

| '658 Patent | '400 Patent |
|---|---|
| a *telecommunications channel access connector connected to said telecommunications channel access circuit for enabling connection to an external telecommunications device of the customer; and* | a *telecommunications channel access connector connected to said telecommunications channel access circuit for enabling connection to an external telecommunications device of the customer; and* |

**Proposed Construction:**

| Ordinary and Accustomed Meaning to One of Ordinary Skill in the Art | Supporting Evidence |
|---|---|
| A "telecommunications channel access connector" is a device providing a connection such as a plug or a wireless connection.<br><br>An "external telecommunications device of the customer" is a device of the user used for telecommunicating, such as a laptop computer. | The specification discloses wireless connectors:<br><br>"The customer selects which utilities or services they require, typically by just connecting to the appropriate connector (also know [sic] as outlet, receptacle, or plug) either through physical means or through wireless connections such as infrared." ('658, c. 2, l. 57-61; '400, c. 2, l. 61-65).<br><br>Testimony of Charles Schelberg. |

**Claim 1[f]**

| '658 Patent | '400 Patent |
|---|---|
| *a control unit having a storage device for storing payment information received from the customer and for controlling said electronic circuit and said telecommunications channel access circuit.* | *a control unit having a device for receiving payment information from the customer and for controlling said electronic circuit and said telecommunications channel access circuit.* |

**Proposed Construction:**

| Ordinary and Accustomed Meaning to One of Ordinary Skill in the Art | Supporting Evidence |
|---|---|
| A "control unit" is an electronic device that controls a system.<br><br>"Storage device" is computer memory.<br><br>"Payment information" is information relating to payment.<br><br>"Controlling said electronic circuit and said telecommunications channel access circuit" means electronically controlling the circuit. | The specification discloses a "microprocessor based [i.e., electronically operated] central control unit." ('658. c. 5. l. 52; '400, c. 5, l. 57).<br><br>Testimony of Charles Schelberg |

<u>**Claim 15**</u>

| **'658 Patent** | **'400 Patent** |
|---|---|
| *A vending machine as claimed in claim 1, wherein said customer interface comprises a mechanism that interfaces with software supplied by the customer.* | *A vending machine as claimed in claim 1, wherein said customer interface comprises a mechanism that interfaces with software supplied by the customer.* |

**Proposed Construction:**

| **Ordinary and Accustomed Meaning to One of Ordinary Skill in the Art** | **Supporting Evidence** |
|---|---|
| See Claim 1.<br><br>"Mechanism that interfaces with software supplied by the customer" means machinery or process that involves interacting with software that is loaded on the customer's computer. | "Alternatively, the user interface can be present inside or uploaded to the user's laptop thereby obviating the need for an interface within the vending machine unit." ('658, c. 6, l. 15-18; '400, c. 6, l. 20-23).<br><br>Testimony of Charles Schelberg. |

<u>**Claim 18**</u>

| **'658 Patent** | **'400 Patent** |
|---|---|
| *A vending machine as claimed in claim 1, wherein said telecommunications channel access connector comprises a high bandwidth channel connector.* | *A vending machine as claimed in claim 1, wherein said telecommunications channel access connector comprises a high bandwidth channel connector.* |

**Proposed Construction:**

| Ordinary and Accustomed Meaning to One of Ordinary Skill in the Art | Supporting Evidence |
|---|---|
| See Claim 1.<br><br>"High bandwidth channel connector" means a connector that provides access to high speed data channels, such as found in ISDN, T1, T3, and cable. | "Vending telecommunications channel access includes providing access to the high speed data channels that are emerging for computer use as well as the typical telephone networks and cellular lines.  These various telecommunications channels, which include ISDN, T1, T3, cable, SONET, xDSL, broadband, baseband, and other channels, have not previously been available for a fee in public and semi-public locations."  ('658, c. 3, l. 39-47; '400, c. 3, l. 43-50).<br><br>The specification discloses wireless connectors:  "The customer selects which utilities or services they require, typically by just connecting to the appropriate connector (also know [sic] as outlet, receptacle, or plug) either through physical means or through wireless connections such as infrared." ('658, c. 2, l. 57-61; '400, c. 2, l. 61-65).<br><br>Testimony of Charles Schelberg. |

<u>**Claim 31**</u>

| '658 Patent | '400 Patent |
|---|---|
| *A vending machine as claimed in claim 1, wherein said telecommunications channel access circuit is <mark>adapted to be connected to a direct Internet connection via an Internet Service Provider selected by the vending machine</mark>.* | *A vending machine as claimed in claim 1, wherein said telecommunications channel access circuit is <mark>adapted to be connected to a direct Internet connection via an Internet Service Provider selected by the vending machine</mark>.* |

**Proposed Construction:**

| Ordinary and Accustomed Meaning to One of Ordinary Skill in the Art | Supporting Evidence |
|---|---|
| See Claim1.<br><br>"Adapted to be connected to a direct Internet connection" means able to connect directly to the Internet.<br><br>"Internet Service Provider" means an entity that provides access to the Internet. | "An additional modification contemplated for all embodiments is a direct Internet connection that would allow the customer full, high speed Internet access without going through their ISP or on-line service and without the limitations of a dial-up connector." ('658, c. 12, l. 48-52; '400, c. 12, l. 51-55).<br><br>The specification discloses wireless connectors: "The customer selects which utilities or services they require, typically by just connecting to the appropriate connector (also know [sic] as outlet, receptacle, or plug) either through physical means or through wireless connections such as infrared."  ('658, c. 2, l. 57-61; '400, c. 2, l. 61-65).<br><br>Testimony of Charles Schelberg. |

**Claim 35**

| '658 Patent | '400 Patent |
|---|---|
| *A vending machine as claimed in claim 1, wherein said telecommunications channel access connector comprises a transceiver to connect wirelessly to an external telecommunications device of the customer.* | *A vending machine as claimed in claim 1, wherein said telecommunications channel access connector comprises a transceiver to connect wirelessly to an external telecommunications device of the customer.* |

**Proposed Construction:**

| Ordinary and Accustomed Meaning to One of Ordinary Skill in the Art | Supporting Evidence |
|---|---|
| See Claim1.<br><br>"Transceiver to connect wirelessly" means a device that sends and receives signals without a direct wired connection. | The specification discloses wireless connectors: "The customer selects which utilities or services they require, typically by just connecting to the appropriate connector (also know [sic] as outlet, receptacle, or plug) either through physical means or through wireless connections such as infrared." ('658, c. 2, l. 57-61; '400, c. 2, l. 61-65).<br><br>Testimony of Charles Schelberg. |

## Claim 38

| '658 Patent | '400 Patent |
|---|---|
| *A vending machine as claimed in claim 1, wherein said control unit is* ==*located remote from said vending machine.*== | *A vending machine as claimed in claim 1, wherein said control unit is* ==*located remote from said vending machine.*== |

**Proposed Construction:**

| Ordinary and Accustomed Meaning to One of Ordinary Skill in the Art | Supporting Evidence |
|---|---|
| See Claim1.<br><br>"Located remote from" means having a different physical location from other components of the system. | "[A]lmost any combination of functional components of the vending machine could be moved to a location remote from the vending machine." ('658, c. 4, l. 30; '400, c. 4, l. 33).<br><br>"It is possible to modify this and require the central control unit 106 to contact a central computer and obtain payment approval before allowing a transaction to begin." ('658, c. 7, l. 39-42; '400, c. 7, l. 44-47).<br><br>Testimony of Charles Schelberg. |

**Claim 40**

| '658 Patent | '400 Patent |
|---|---|
| *A vending machine as claimed in claim 1, wherein said control unit further comprises circuitry for controlling a plurality of vending machines.* | *A vending machine as claimed in claim 1, wherein said control unit further comprises circuitry for controlling a plurality of vending machines.* |

**Proposed Construction:**

| Ordinary and Accustomed Meaning to One of Ordinary Skill in the Art | Supporting Evidence |
|---|---|
| See Claim1. "Circuitry for controlling a plurality" means having electronic circuitry that is able to control telecommunications access for a number of external devices of customers. | The specification discloses a "microprocessor based [i.e., electronically operated] central control unit." ('658. c. 5. l. 52; '400, c. 5, l. 57). Testimony of Charles Schelberg. |

**Claim 49**

| '658 Patent | '400 Patent |
|---|---|
| *A vending machine as claimed in claim 1, wherein said payment mechanism comprises a mechanism that interfaces with software resident on equipment of the customer.* | *A vending machine as claimed in claim 1, wherein said payment mechanism comprises a mechanism that interfaces with software resident on equipment of the customer.* |

**Proposed Construction:**

| Ordinary and Accustomed Meaning to One of Ordinary Skill in the Art | Supporting Evidence |
|---|---|
| See Claim1. "Mechanism that interfaces with software resident on the equipment of the customer" means a process or technique that involves interacting with software that is located on the customer's computer. | "Alternatively, the user interface can be present inside or uploaded to the user's laptop thereby obviating the need for an interface within the vending machine unit." (658, c. 6, l. 15-18; '400, c. 6, l. 20-23). Testimony of Charles Schelberg. |

Respectfully submitted,

POWEROASIS, INC. and
POWER OASIS NETWORKS, LLC
By their attorneys,


/s/ William A. Scofield, Jr.
Sibley P. Reppert, BBO No. 416900
William A. Scofield, Jr., BBO No. 448940
LAHIVE & COCKFIELD, LLP
28 State Street
Boston, Massachusetts  02109-1784
Tel. (617) 227-7400

Dated:  December 23, 2005


## CERTIFICATE OF SERVICE

I, William A. Scofield, Jr., hereby certify that I caused the foregoing to be served via the Court's electronic filing system on counsel of record this 23rd day of December, 2005.


/s/ William A. Scofield, Jr.
 William A. Scofield, Jr.