# Exhibit 7



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# *BIBDATASHEET*

Bib Data Sheet

**CONFIRMATION NO. 5577**

| SERIAL NUMBER 10/819,168 | FILING DATE 04/07/2004 RULE | CLASS 379 | GROUP ART UNIT 2643 | ATTORNEY DOCKET NO. 0043/008004 |
|---|---|---|---|---|

**APPLICANTS**

Charles C. Schelberg JR., Milford, NH;

Thomas M. Duff JR., Nashua, NH;

** CONTINUING DATA ***********************
This application is a CON of 10/270,108 10/15/2002 PAT 6,721,400
which is a CON of 09/985,930 11/06/2001 PAT 6,466,658
which is a CON of 09/594,028 06/15/2000 PAT 6,314,169
which is a CIP of 09/156,487 09/18/1998 ABN
which is a CON of 08/796,562 02/06/1997 PAT 5,812,643

** FOREIGN APPLICATIONS ********************

IF REQUIRED, FOREIGN FILING LICENSE GRANTED     ** SMALL ENTITY **
** 06/21/2004

| Foreign Priority claimed ☐ yes ☐ no  35 USC 119 (a-d) conditions met ☐ yes ☐ no ☐ Met after Allowance  Verified and Acknowledged _____ Examiner's Signature _____ Initials | STATE OR COUNTRY . NH | SHEETS DRAWING 12 | TOTAL CLAIMS 50 | INDEPENDENT CLAIMS 2 |
|---|---|---|---|---|

**ADDRESS**
22893
SMITH PATENT OFFICE
1901 PENNSYLVANIA AVENUE N W
SUITE 200
WASHINGTON , DC
20006

**TITLE**
Power and telecommunications access vending machine

| FILING FEE | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT | ☐ All Fees  ☐ 1.16 Fees ( Filing )  ☐ 1.17 Fees ( Processing Ext. of time ) |
|---|---|---|



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 72313-1450
www.uspto.gov

# *BIBDATASHEET*

Bib Data Sheet

**CONFIRMATION NO. 5577**

| SERIAL NUMBER 10/819,168 | FILING DATE 04/07/2004 RULE | CLASS 379 | GROUP ART UNIT 2643 | ATTORNEY DOCKET NO. 0043/008004 |
|---|---|---|---|---|

APPLICANTS

   Charles C. Schelberg JR., Milford, NH;

   Thomas M. Duff JR., Nashua, NH;

** CONTINUING DATA **************************
   This application is a CON of 10/270,108 10/15/2002 PAT 6,721,400
   which is a CON of 09/985,930 11/06/2001 PAT 6,466,658
   which is a CON of 09/594,028 06/15/2000 PAT 6,314,169
   which is a CIP of 09/156,487 09/18/1998 ABN
   which is a CON of 08/796,562 02/06/1997 PAT 5,812,643

*Yes JHC*

** FOREIGN APPLICATIONS ********************

*none JHC*

IF REQUIRED, FOREIGN FILING LICENSE GRANTED    ** SMALL ENTITY **
** 06/21/2004

| Foreign Priority claimed ☐ yes ☑ no<br>35 USC 119 (a-d) conditions met ☐ yes ☑ no ☐ Met after Allowance<br>Verified and Acknowledged   Examiner's Signature    Initials | STATE OR COUNTRY NH | SHEETS DRAWING 12 | TOTAL CLAIMS 50 | INDEPENDENT CLAIMS 2 |
|---|---|---|---|---|

ADDRESS
22893
SMITH PATENT OFFICE
1901 PENNSYLVANIA AVENUE N W
SUITE 200
WASHINGTON , DC
20006

TITLE
Power and telecommunications access vending machine

| FILING FEE | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |

②

# APPLICATION

# FOR

# UNITED STATES LETTERS PATENT

**TITLE:  POWER AND TELECOMMUNICATIONS ACCESS
          VENDING MACHINE**

**INVENTORS:  Charles C. SCHELBERG, Jr. and
              Thomas M. DUFF, Jr.**

③

What is claimed is:


1.  A method for vending telecommunications channel access
to a customer, said method comprising the steps of:

receiving payment information from the customer to initiate
a vending transaction;

providing a customer interface for indicating the status of
the vending transaction;

providing an electronic circuit for determining when the
vending transaction is completed;

enabling access to at least one external telecommunications
channel at the beginning of the vending transaction and disabling
access at the end of the vending transaction;

enabling a connection to an external telecommunications
device of the customer; and

providing a control unit for receiving payment information
from the customer and controlling the electronic circuit and a
telecommunications channel access circuit.


2.  A method for vending telecommunications channel access
to a customer as claimed in claim 1, wherein said step of
receiving payment information includes receiving cash in a cash
payment receiving device.


- 39 -

3. A method for vending telecommunications channel access to a customer as claimed in claim 1, wherein said step of receiving payment information includes receiving information to initiate an electronic payment.

5

4. A method for vending telecommunications channel access to a customer as claimed in claim 3, wherein said step of receiving payment information includes receiving information from at least one of a credit card, debit card, smart card, prepaid

10    card and RF ID card.

5. A method for vending telecommunications channel access to a customer as claimed in claim 3, wherein said step of receiving payment information includes authenticating the

15    customer.

6. A method for vending telecommunications channel access to a customer as claimed in claim 5, wherein said step of receiving payment information includes using a fingerprint

20    recognition device.

7. A method for vending telecommunications channel access to a customer as claimed in claim 5, wherein said step of receiving payment information includes using a voice recognition

25    device.

- 40 -

8.  A method for vending telecommunications channel access to a customer as claimed in claim 5, wherein said step of receiving payment information includes using a retinal pattern

5   recognition device.

9.  A method for vending telecommunications channel access to a customer as claimed in claim 3, further comprises the step of authorizing a billing transaction for initiating the

10  electronic payment.

10.  A method for vending telecommunications channel access to a customer as claimed in claim 9, wherein said step of authorizing a billing transaction includes using a separate

15  billing computer.

11.  A method for vending telecommunications channel access to a customer as claimed in claim 9, wherein said step of authorizing a billing transaction includes using a billing

20  computer located within a vending machine.

12.  A method for vending telecommunications channel access to a customer as claimed in claim 1, wherein said step of providing the customer interface includes using at least one

- 41 -



light on a surface of a vending machine to indicate the status of the vending transaction.

13. A method for vending telecommunications channel access

5 to a customer as claimed in claim 1, wherein said step of providing the customer interface includes using a video display unit on a surface of a vending machine to indicate the status of the vending transaction.

10 14. A method for vending telecommunications channel access to a customer as claimed in claim 1, wherein said step of providing the customer interface includes using an auditory signal generated by a vending machine to indicate the status of the vending transaction.

15

15. A method for vending telecommunications channel access to a customer as claimed in claim 1, wherein said step of providing the customer interface includes using a mechanism that interfaces with software supplied by the customer to indicate the

20 status of the vending transaction.

16. A method for vending telecommunications channel access to a customer as claimed in claim 1, wherein said step of providing the customer interface includes using a card reader for

25 approving a card supplied by the customer.

- 42 -

17. A method for vending telecommunications channel access to a customer as claimed in claim 1, wherein said step of enabling access to at least one external telecommunications
5    channel includes using a switchable channel access circuit.

18. A method for vending telecommunications channel access to a customer as claimed in claim 1, wherein said step of enabling a connection to the external telecommunications device
10    includes using a high bandwidth channel connector.

19. A method for vending telecommunications channel access to a customer as claimed in claim 18, wherein said step of enabling a connection to the external telecommunications device
15    includes using a fiber optic line connector.

20. A method for vending telecommunications channel access to a customer as claimed in claim 18, wherein said step of enabling a connection to the external telecommunications device
20    includes using a copper line connector.

21. A method for vending telecommunications channel access to a customer as claimed in claim 18, wherein said step of enabling a connection to the external telecommunications device
25    of the customer includes using an infrared connector.

- 43 -

22.   A method for vending telecommunications channel access to a customer as claimed in claim 18, wherein said step of enabling a connection to the external telecommunications device

5   includes using a local telephone line connector.

23.   A method for vending telecommunications channel access to a customer as claimed in claim 18, wherein said step of enabling a connection to the external telecommunications device

10   includes using a modem disposed in a vending machine.

24.   A method for vending telecommunications channel access to a customer as claimed in claim 1, wherein said step of enabling a connection to the external telecommunications device

15   of the customer includes using a predetermined connector.

25.   A method for vending telecommunications channel access to a customer as claimed in claim 24, wherein said step of enabling a connection to the external telecommunications device

20   includes using an RJ-11 connector.

26.   A method for vending telecommunications channel access to a customer as claimed in claim 1, wherein said step of enabling a connection to the external telecommunications device

25   of the customer includes using a telecommunications channel

- 44 -

access connector adapted to be connected to a dial-up telephone line.

27.   A method for vending telecommunications channel access
5    to a customer as claimed in claim 1, wherein said step of enabling a connection to the external telecommunications device of the customer includes using a RJ-11 connector.

28.   A method for vending telecommunications channel access
10   to a customer as claimed in claim 1, wherein said step of enabling a connection to the external telecommunications device of the customer includes using a fiber optic line connector.

29.   A method for vending telecommunications channel access
15   to a customer as claimed in claim 1, wherein said step of enabling a connection to the external telecommunications device of the customer includes using an infrared line connector.

30.   A method for vending telecommunications channel access
20   to a customer as claimed in claim 1, wherein said step of enabling a connection to the external telecommunications device of the customer includes using a modem disposed in a vending machine.

31.  A method for vending telecommunications channel access to a customer as claimed in claim 1, wherein said step of enabling a connection to the external telecommunications device of the customer includes using a telecommunications channel

5  access circuit adapted to be connected directly to an Internet connection via an Internet Service Provider selected by a vending machine.

32.  A method for vending telecommunications channel access

10  to a customer as claimed in claim 1, wherein said step of enabling a connection to the external telecommunications device of the customer includes using a telecommunications channel access circuit adapted to be connected directly to an Internet connection via an Internet Service Provider selected by the

15  customer.

33.  A method for vending telecommunications channel access to a customer as claimed in claim 1, further comprises the step of transmitting and receiving voice communications over the

20  external telecommunications channel using a microphone and a speaker.

34.  A method for vending telecommunications channel access to a customer as claimed in claim 1, further comprises the step

of sending video images over the external telecommunications channel using a video camera connected to a vending machine.

35.  A method for vending telecommunications channel access to a customer as claimed in claim 1, wherein said step of enabling a connection to the external telecommunications device of the customer includes using a transceiver to connect wirelessly to the external telecommunications device.

36.  A method for vending telecommunications channel access to a customer as claimed in claim 35, wherein said step of enabling a connection to the external telecommunications device of the customer includes using an infrared transceiver.

37.  A method for vending telecommunications channel access to a customer as claimed in claim 1, further comprises the step of supplying power to a vending machine by an electrical generator.

38.  A method for vending telecommunications channel access to a customer as claimed in claim 1, wherein said step of providing a control unit include providing a control unit located remote from a vending machine.

39.  A method for vending telecommunications channel access to a customer as claimed in claim 38, wherein said step of providing a control unit includes using a telecommunications channel access circuit located remote from the vending machine.

5

40.  A method for vending telecommunications channel access to a customer as claimed in claim 1, further comprises the step of using circuitry for controlling a plurality of vending machines.

10

41.  A method for vending telecommunications channel access to a customer as claimed in claim 1, wherein said step of vending telecommunications channel access to a customer includes providing a vending machine disposed in a booth.

15

42.  A method for vending telecommunications channel access to a customer as claimed in claim 1, wherein said step of vending telecommunications channel access to a customer includes providing a vending machine disposed in a kiosk.

20

43.  A method for vending telecommunications channel access to a customer as claimed in claim 42, wherein said step of vending telecommunications channel access to a customer includes providing a plurality of vending machines which are present in a

kiosk so that multiple users can simultaneously use each of the plurality of vending machines.

44. A method for vending telecommunications channel access
5    to a customer as claimed in claim 1, wherein said step of vending telecommunications channel access to a customer includes providing a vending machine disposed in a storage locker.

45. A method for vending telecommunications channel access
10   to a customer as claimed in claim 1, wherein said step of vending telecommunications channel access to a customer includes providing a vending machine disposed on a wall mounting device.

46. A method for vending telecommunications channel access
15   to a customer as claimed in claim 1, wherein said step of providing a control unit includes using a telecommunications channel access circuit in a building so that the external telecommunications channel can be located remotely from a vending machine to vend telecommunications.

20

47. A method for vending telecommunications channel access to a customer as claimed in claim 1, wherein said step of enabling a connection to the external telecommunications device of the customer includes using a telecommunications channel

- 49 -

access circuit which comprises at least two different types of
data lines.

48.  A method for vending telecommunications channel access
5  to a customer as claimed in claim 47, wherein said step of
enabling a connection to an external telecommunication device of
the customer includes using the data lines which can be of any
type that are used by a telecommunications supplier.

10     49.  A method for vending telecommunications channel access
to a customer as claimed in claim 1, wherein said step of
providing the control unit includes using a payment mechanism
which comprises a mechanism that interfaces with software that is
resident on equipment of the customer.

15

50.  A method for vending telecommunications channel access
to a customer using a vending system, said method comprising the
steps of:

receiving payment information from the customer to initiate
20  a vending transaction;

providing a customer interface for indicating the status of
the vending system;

providing an electronic circuit for determining when the
vending transaction is completed;

- 50 -

⑮

enabling access to at least one external telecommunications channel at the beginning of the vending transaction and disabling access at the end of the vending transaction;

enabling a connection to an external telecommunications

5    device of the customer; and

providing a control unit for receiving payment information from the customer and controlling the electronic circuit and a telecommunications channel access circuit.

10

- 51 -

16



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/819,168 | 04/07/2004 | Charles C. Schelberg JR. | 0043/008004 | 5577 |

22893    7590    04/07/2005

SMITH PATENT OFFICE
1901 PENNSYLVANIA AVENUE N W
SUITE 200
WASHINGTON, DC 20006

| EXAMINER |
|---|
| CHAN, WING F |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2643 | |

DATE MAILED: 04/07/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

⑰

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 10/819,168 | SCHELBERG ET AL. |
| | Examiner | Art Unit | |
| | Wing F. Chan | 2643 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>26 January 2005</u>.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-50</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-50</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>07 April 2004</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08) Paper No(s)/Mail Date <u>1/26/05</u>.

4)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

5)☐ Notice of Informal Patent Application (PTO-152)

6)☐ Other: _____.

U.S. Patent and Trademark Office

PTOL-326 (Rev. 1-04)    Office Action Summary    Part of Paper No./Mail Date 20050401

Application/Control Number: 10/819,168                                    Page 2
Art Unit: 2643

1.    The nonstatutory double patenting rejection is based on a judicially created
doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the
unjustified or improper timewise extension of the "right to exclude" granted by a patent
and to prevent possible harassment by multiple assignees.  See In re Goodman, 11
F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); In re Longi, 759 F.2d 887, 225
USPQ 645 (Fed. Cir. 1985); In re Van Ornum, 686 F.2d 937, 214 USPQ 761 (CCPA
1982); In re Vogel, 422 F.2d 438, 164 USPQ 619 (CCPA 1970);and, In re Thorington,
418 F.2d 528, 163 USPQ 644 (CCPA 1969).
       A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) may be
used to overcome an actual or provisional rejection based on a nonstatutory double
patenting ground provided the conflicting application or patent is shown to be commonly
owned with this application.  See 37 CFR 1.130(b).
       Effective January 1, 1994, a registered attorney or agent of record may sign a

terminal disclaimer.  A terminal disclaimer signed by the assignee must fully comply with

37 CFR 3.73(b).


2.    Claims 1-50 are rejected under the judicially created doctrine of obviousness-

type double patenting as being unpatentable over claims 1-49 of US PAT. No.

6,721,400, claims 1-49 of US PAT. No.  6,466,658, claims 1-66 of US PAT. No.

6,314,169 and claim 23 of US PAT. No. 5,812,643.  Although the conflicting claims are

not identical, they are not patentably distinct from each other because the present

claims are broader versions of the patent claims in the aforementioned patents, and the

dependent claims are also obvious over the patent claims since the patent claims is in

comprising format it is open to cover the other non claimed features and is directed to

the same invention.


3.    The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

Application/Control Number: 10/819,168                                    Page 3
Art Unit: 2643

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

4.     Claims 1, 3, 5, 9, 10, 13, 14, 16, 17, 24, 26, 33, 40, 41, 50 are rejected under 35

U.S.C. 102(b) as being anticipated by Newkirk et al (US PAT. NO. 4,517,412 hereinafter

Newkirk).

       As to claims 1, 3, 5, 9, 10, 13, 14, 16, 17, 24, 26, 50, Newkirk discloses a method

for vending telecommunications channel access to a customer (e.g. see abstract).

Newkirk discloses receiving payment (e.g. credit card and authenticating the card, see

col. 5 lines 42-51) information, providing a customer interface for indicating transaction

status (e.g. visual or aural see col. 7 lines 4-17), providing an electronic circuit for

determining the vending transaction is completed (e.g. processor 18, see col. 8 lines 8-

18), enabling access to at least one external communications channel at the beginning

and disabling at the end of the vending transaction (e.g. see col. 7 line 32 to col. 8 line

2, col. 10 lines 28 to col. 11 line 43 which discloses when the credit card is validated the

user is given access to the telephone line), enabling a connection to an external

telecommunications device of the customer (e.g. see Fig. 4, data jack 24, col. 10 lines

28 to col. 11 line 43), providing a control unit (e.g. local processor 11) for receiving

payment information (e.g. see Fig. 4 reader 13) and controlling the electronic circuit

(e.g. see col. 8 lines 8-18 col. 11 lines 34-43 where the local process sends all the call

log information to the verification processor 18 to control it to provide a log for billing



purposes), a telecommunications channel access circuit (e.g. circuit established via switch 25 in Fig. 4, col. 10 line 65 to col. 11line 18).

As to claim 33, see telephone set 10.

As to claim 40, Newkirk discloses there is a plurality of local stations that are controlled by a satellite station.

As to claim 41, see Newkirk col. 11 line10 that discloses the local station is a booth.

5.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

6.    This application currently names joint inventors. In considering patentability of the claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to the contrary. Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order for the examiner to consider the applicability of 35 U.S.C. 103(c) and potential 35 U.S.C. 102(e), (f) or (g) prior art under 35 U.S.C. 103(a).

7.    Claims 2, 4, 6-8, 11, 12, 15, 18-23, 25, 27-32, 34-39, 42-49 are rejected under 35

U.S.C. 103(a) as being unpatentable over Newkirk.

As to claim 2, although Newkirk discloses accepting credit card as a payment

method, it is well known that conventional access to a telecommunications channel (e.g.

payphone) involves cash, thus, it would have been obvious to one of ordinary skill in the

art at the time the invention was made to modify Newkirk's teachings to also accept

cash as it is the most common and widely accepted form of payment.  It also makes the

terminal more widely accepted since it would accept all forms of payment.

As to claim 4, Newkirk discloses accepting credit cards, smart cards (col. 3 lines

53, thus, it would have been obvious to one of ordinary skill in the art at the time the

invention was made to modify Newkirk to also accept debit card, prepaid card and RF

ID card as payment information since such cards are all well known forms of payment

cards, and it would make the Newkirk system more accessible by the public and in

terms of a business stand point to be able to attract more customers.

As to claims 6-8, the use of fingerprint, voice recognition, retinal pattern to

identify an individual is old and well known in the art, thus, it would have been obvious

to one of ordinary skill in the art at the time the invention was made to modify Newkirk to

use such means since it is simple and accurate to use, and guard against fraudulent

charges from stolen credit cards.

As to claim 11, to provide a billing computer within a vending would have been

obvious to one having ordinary skill in the art at the time the invention was made, since

22

Application/Control Number: 10/819,168                              Page 6
Art Unit: 2643

it has been held that rearranging parts of an invention involves only routine skill in the

art. *In re Japikse*, 86 USPQ 70.

As to claim 12, the use of status lights is notoriously old and well known, thus, it

would have been obvious to one of ordinary skill in the art at the time the invention was

made to modify Newkirk to comprise status lights as it is economical to make and use.

As to claim 15, it is old and well known in the art that computers access the

Internet using software such as Internet Explorer or Netscape, or the like, thus to use

the user's computer software as a status indication means would have been obvious to

one of ordinary skill in the art at the time the invention was made since it economically

provides the connection status to the user, i.e. no special or additional status means is

needed with the vending machine thus making it cheaper to make.

As to claims 18-22, 28, 29, the specific type of connector used to connect to the

external telecommunications devices through routine experimentation it would have

been obvious to one of ordinary skill in the art at the time the invention was made to

select the best connector.

As to claims 23, 30, the use of a modem would have been obvious to one of

ordinary skill in the art at the time the invention was made since it is old and well known

that a modem is needed in order for a computer to communicate data signals over

analog PSTN lines.

As to claims 25, 27, RJ-11 connector is the standard telephone connector jack,

thus, it would have been obvious to one of ordinary skill in the art at the time the

23

Application/Control Number: 10/819,168                                    Page 7
Art Unit: 2643

invention was made to modify the connector in Newkirk to comprise a RJ-11 jack to

ensure proper connection within the United States.

As to claims 31, 32, data communication via the Internet is a widely accepted

form of communications nowadays, thus, it would have been obvious to one of ordinary

skill in the art at the time the invention was made to modify Newkirk to communicate via

the Internet to take advantage of the latest technology; and convenience and speed

that's provided by the Internet.

As to claim 34, it is old and well known in the art to send images using a camera

connected to a computer, thus, it would have been obvious to one of ordinary skill in the

art at the time the invention was made to modify  user's data terminal (e.g. computer) in

Newkirk to comprise a camera as is old and well known in the art to send images to a

remote location.

As to claims 35, 36, the use of wireless connections, (e.g. IR, Bluetooth – short

range wireless connection) to provide connectivity between two devices located at the

same location is old and well known in the art, thus, it would have been obvious to one

of ordinary skill in the art at the time the invention was made to modify Newkirk to use

wireless transceivers to connect to the external communication device to eliminate the

need of cumbersome connection cables.

As to claim 37, to modify Newkirk to comprise a electrical generator to provide

electrical power would have been obvious to one of ordinary skill in the art at the time

the invention was made to make the vending machine (i.e. the local station) portable

and usable at various different locations.

24

Application/Control Number: 10/819,168                                      Page 8
Art Unit: 2643

As to claims 38, 39, the provision of a control unit remote from the vending machine would have been obvious to one having ordinary skill in the art at the time the invention was made, since it has been held that rearranging parts of an invention involves only routine skill in the art. *In re Japikse*, 86 USPQ 70.

As to claim 42, it is old and well known in the art that information/vending booths can also be in the form of a kiosk, thus it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the booth in Newkirk to comprise a kiosk since the two are well known substitutes of each other.

As to claim 43, Newkirk discloses that there a plurality of local stations, thus, it would have been obvious to one of ordinary skill in the art at the time the invention was made to provide multiple kiosks to provide for multiple users simultaneously.

As to claims 44-46, the specific location of the vending machine location is deemed an obvious design choice.

As to claims 47, 48, Newkirk in Fig. 3 shows the use of various types of data line, thus it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the data lines in Newkirk to comprise at least two types of data lines in order to provide the user with a choice of connection lines depending on the speed required and price associated therewith, i.e. PSTN lines for low speed and cheaper price, DSL or cable modem lines for high speed connection and higher price for the user.

As to claim 49, it is old and well known that computers stored credit card information for making payments, thus, it would have been obvious to one of ordinary

(25)

Application/Control Number: 10/819,168                                Page 9
Art Unit: 2643

skill in the art at the time the invention was made to modify Newkirk to comprise means

for communicating with the user's computer to obtain such information to speed up the

vending process.


8.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Wing F. Chan whose telephone number is 571-272-

7493. The examiner can normally be reached on Monday to Friday from 9 AM to 6 PM.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Curtis Kuntz can be reached on 571-272-7499.  The fax phone number for

the organization where this application or proceeding is assigned is 703-872-9306.

        Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).

Wing F. Chan
Primary Examiner
Art Unit 2643

4/1/05