# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| POWEROASIS, INC. and<br>POWEROASIS NETWORKS, LLC,<br><br>            Plaintiffs,<br><br>      v.<br><br>WAYPORT, INC.<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No.:  04-12023 RWZ<br>)<br>)  Hon. Rya W. Zobel<br>)<br>)<br>)<br>)<br>)<br>) |

**WAYPORT, INC.'S SUR-REPLY TO POWEROASIS'
REPLY BRIEF REGARDING CLAIM CONSTRUCTION**

Less than one week before the Court's claim construction hearing in this matter, PowerOasis sought leave to file a reply brief on claim construction ("PO Reply Br.") although many of the arguments it makes could, and should, have been made in its opening brief. PowerOasis' arguments are without merit and serve as a prime example of why the *en banc* Court of Appeals for the Federal Circuit only recently cautioned district courts against relying on "conclusory or unsupported" extrinsic evidence when construing patent claims. *Phillips v. AWH Corporation*, 415 F.3d 1303, 1317 (Fed. Cir. 2005).

A. **PowerOasis' Attempt To Expand The Meaning Of "Vending Machine" Beyond What The Patentees Intended Is Unsupported**

PowerOasis alleges that Wayport "improperly confines the claims to one disclosed embodiment, *i.e.*, a 'stand-alone unit' like a Coke® machine." (PO Reply Br. at 1). PowerOasis then proceeds to recite isolated statements from the specification that

allegedly support its proposed construction that the term "vending machine," as claimed in claim 1, is a system containing functional components that need not be located in a stand-alone unit. (PO Reply Br. at 3). PowerOasis' arguments are wrong on several grounds.

PowerOasis' allegation that the specification "makes clear that <u>the functional components depicted in FIG 4 do not need to be located in a stand-alone unit</u>" is misleading. (PO Reply Br. at 3, emphasis in original). PowerOasis identifies several citations from the specification and represents that they *all* refer to Figure 4. However, even a cursory reading of the specification reveals that that is not true.[1]

Furthermore, some of the citations that appear at page 3 of PowerOasis' Reply Brief relate to alternative embodiments that are disclosed in the specification but not claimed in the asserted claims. For example, PowerOasis highlights the alternative embodiment where the user interface can reside on the user's laptop instead of in the vending machine to support its broad interpretation of the term "vending machine": "*Alternatively*, the user interface can be present inside or uploaded to the user's laptop or other device thereby obviating the need for an interface within the vending machine." (PO Reply Br. at 3, citing '658 patent, col. 6, ll. 15-18; '400 patent, col. 6, ll. 17-22)(emphasis added). PowerOasis overlooks the basic patent law principle that patentees can disclose embodiments but not necessarily claim them. *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1106 (Fed. Cir. 1996) (it is well established that "subject matter disclosed but not claimed in a patent application is dedicated to the public"). This "alternative" embodiment, where there is *no* user interface in the vending machine, is disclosed in the

---

[1] Figure 4 is discussed beginning at col. 10, l. 43 in the '658 patent and at col. 10, l. 46 in the '400 patent, whereas most of PowerOasis' citations are to other sections of the specifications.

2

specification but not covered by the asserted claims. Therefore, PowerOasis has brought attention to embodiments that, if practiced by Wayport, cannot be deemed to be infringing the asserted claims. *Id.*

**B.    PowerOasis Mischaracterizes Dr. Cooley's Deposition Testimony**

PowerOasis' discussion of Dr. Edmond Cooley's testimony consists of various mischaracterizations of a handful of quotes from Dr. Cooley, wrenched out of context from an 85-page deposition transcript. Although PowerOasis asserts that Dr. Cooley "actually supported the construction proposed by PowerOasis" for "vending machine" in the preamble to Claim 1 of the asserted patents, as well as the construction of "vending transaction," as is highlighted below, that is simply untrue.

Perhaps even more importantly, however, there is nothing in PowerOasis' Reply Brief that affects the plain meaning of the disputed claim terms based on the *intrinsic* evidence. Indeed, there is nothing in PowerOasis' Reply Brief that in any way alters the validity of Dr. Cooley's opinion that persons of skill in the art in 1997 would have understood the plain meaning of the disputed claim terms in precisely the manner set forth in Wayport's Rebuttal Claim Construction Brief. PowerOasis instead attempts to create the illusion of support for its strained claim construction by mischaracterizing Dr. Cooley's deposition testimony.

PowerOasis tells the Court that Dr. Cooley "agreed that a 'vending machine for vending telecommunication channel access' was not a normal vending machine, which he understood to be a Coke or candy vending machine." (PO Reply Br. at 4). However, Dr. Cooley in fact *denied* the proposition with which PowerOasis now wants the Court to believe he "agreed." In his Declaration, Dr. Cooley expressly stated that it was his "opinion that a person of ordinary skill in the art would understand the term 'vending

3

machine' to have its plain meaning of a mechanically, electrically, or electronically operated device or unit for dispensing goods or services to a single customer at a time when the customer provides sufficient payment." (Cooley Dec. at ¶ 25.) Furthermore, at his deposition, Dr. Cooley was asked the following:

Q: So "vending machine for vending telecommunications channel access" is not your normal vending machine; isn't that right? (Cooley Dep. p. 38, lines 11-13).

After an objection relating to the vagueness of the term "normal" vending machine, Dr. Cooley replied:

A: If I understand your question, I would answer it by saying that a vending machine vends some kind of service or goods and one that vends telecommunications services would therefore be a vending machine. (Cooley Dep. at p. 39, lines 13-17).

How does PowerOasis justify characterizing this response by Dr. Cooley as "agreement" that the claimed vending machine is not a "normal" vending machine?

Although Dr. Cooley certainly agreed with the inarguable proposition that words can be used "literally or figuratively" (PO Reply Br. at 5), and even agreed that, if one were speaking "figuratively," one might characterize eBay as a "vending machine," he never agreed that the *claimed* vending machine was anything other than a *literal* vending machine.[2] Indeed, when addressing the actual claimed "vending machine" (rather than an unclaimed "figurative" vending machine), Dr. Cooley repeatedly *denied* that eBay would fall within the scope of that claim term:

Q: So under that approach, eBay is a vending machine under your definition, isn't it? We've just been through every part of it.
A: I don't agree with that.
Q: It's a vending machine for vending goods over the Internet, correct?
A: I don't think of it that way, no.
Q: But it meets -- each individual part of your definition is met by eBay, isn't it? . . . .

---

[2] Furthermore, PowerOasis ignores the fact that what matters is not whether Dr. Cooley agrees that terms can be used in the figurative or literal sense, but whether there is proof in the intrinsic evidence that the patentees intended to use the term "vending machine" in the figurative rather than literal sense.

4

A: It meets several of the criteria, I admit. I still don't think of eBay as a vending machine. (Cooley Dep. p. 47, lines 17 - p. 48, line 8).

Although PowerOasis summarizes much of Dr. Cooley's testimony regarding a *Time* magazine article (which Dr. Cooley saw for the first time at his deposition) (PO Reply Br. at 5), PowerOasis fails to quote the most relevant answer given by Dr. Cooley. In Dr. Cooley's opinion, the *Time* magazine article is completely irrelevant to the question of how a person of skill in the art in 1997 would have understood the claim term "vending machine."

Q: Does that [*Time* magazine article] possibly tell you anything about how one of ordinary skill might have used the word "vending machine" in connection with this invention?
A: Considering it is from Time magazine, I would say no. (Cooley dep. p. 51, lines 17-22).

PowerOasis argues that Dr. Cooley was not aware of any "statement in the patent" suggesting that all of the components illustrated in Figure 4 of the patents "had to be colocated in the same physical box." (PO Reply Br. at 6). PowerOasis, however, neglects to tell the Court that Dr. Cooley expressly testified later in his deposition that persons of skill in the art *would* understand Figure 4 as illustrating a unitary device:

Q: [Referring to Figure 4] Let's start with the engineering point of view.
A: Okay. When I see a block diagram I see blocks of intercommunicating devices. So, for example, I see a block 300 drawn around these devices, so I think of that, as we have discussed earlier, unitary device or system.
Q: So, without otherwise, your understanding would be that all components would be within this block diagram or colocated; isn't that correct?
[objection omitted]
A: From the point of view of the block diagram, I would think that all those devices or all those systems would be within the block in Figure 4 marked 300. (Cooley Dep. p. 80, lines 4-20).

PowerOasis asserts that Dr. Cooley "agreed that the inventors referred to the concept of spreading things out." (PO Reply Br. at 6). Contrary to the impression

5

PowerOasis seeks to create, however, Dr. Cooley was *not* agreeing that a system could be distributed remotely and still fall within the claim term "vending machine." Indeed, he expressly testified that such a device "would no longer work," (Cooley Dep. at p. 61, line 24 - p. 62, line 4) and that, although one could theoretically move components of a vending machine to a remote location, "the author [of the patents] does not tell us how they would do that." (Cooley Dep. at 63, lines 9-10).

PowerOasis notes that Dr. Cooley agreed that the patent describes one embodiment where the "pieces are not all in the same box." (PO Reply Br. at 7). But PowerOasis fails to note for the Court that there is *no* testimony from Dr. Cooley tying these embodiments to any asserted claim, and that there is likewise *no* testimony from Dr. Cooley even suggesting that such an embodiment would fall within the scope of the claimed "vending machine."

Accordingly, there is no support for PowerOasis' contention that Dr. Cooley agrees with PowerOasis' claim construction of the term "vending machine."

C.  **PowerOasis Tries To Expand The Term "Vending Transaction" To Cover Subscription Based Services In An Effort To Read On The Wayport Systems**

PowerOasis argues that two of Wayport's proposed constructions conflict and that "vending transaction" encompasses both "pay-as-you-go" and subscription-based services.[3] (PO Reply Br. at 7-8). PowerOasis once again relies upon conclusory statements that find no support in the intrinsic record and fly in the face of basic claim construction principles.

---

[3]  This issue is important to infringement because if the term "vending transaction" is construed as limited to "pay-as-you-go" services and Wayport's systems are deemed to be subscription-based services, then there would be no infringement by Wayport.

6

PowerOasis states that the agreed-upon construction of the term "when the vending transaction is complete" conflicts with the proposed construction for "enabling access ... at the beginning of a vending transaction and disabling access at the end of the vending transaction." On the contrary, the constructions of both terms indicate that "vending transaction" is limited to one session. PowerOasis confuses the length of the session with how that session ends. PowerOasis argues that the specification discloses more than one way to terminate the session. However, apparently PowerOasis fails to appreciate that this does not change the fact that what is being terminated is a single session – which is consistent with Wayport's construction.[4]

The agreed-upon construction for the term "when the vending transaction is complete" is "when the customer's connection to the vending machine has been terminated or the customer's payment has been exhausted." PowerOasis argues that the latter part of that construction – "or the customer's payment has been exhausted" – includes both "open-ended" and "prepaid subscription." (PO Reply Br. at 8). However, PowerOasis offers no support from the intrinsic record for this conclusion. Instead, the more plausible construction is that if one looks to the claim as a whole – a basic claim construction principle -- it is clear that the claim itself defines "vending transaction" as a single open-ended session, as Wayport proposes. (*See* Wayport's Rebuttal Claim Construction Brief at pp. 22-24). PowerOasis cannot point to a single instance – in the claim or in the specification – that indicates that the "vending transaction" can consist of multiple sessions.

---

[4] PowerOasis argues that WilmerHale, counsel for Wayport in this litigation and counsel for T-Mobile in the New Hampshire action, proposes different constructions for element 1(d) (PO Reply Br. at 8). That is not correct. Both defendants, Wayport and T-Mobile, propose a construction that element 1(d) covers a single open-ended session.

7

Additional support for Wayport's proposed construction that "vending transaction" is a single open-ended session is found in the prosecution history of the '487 application.[5] During prosecution of the '487 application, a related patent application, PowerOasis admitted that the vending transaction is open-ended. PowerOasis' assertion that the admission has no bearing on the construction of the claims at hand is without merit. The language of claim 22 of the '487 application is very similar to the language of claim 1 of the patents-in-suit. (*See* Exh. 6 to Wayport's Rebuttal Claim Construction Brief). Furthermore, the admission was not limited to amended claim 22, as PowerOasis now argues, but instead was an attempt by PowerOasis to distinguish the alleged "invention" from what is disclosed in the prior art:

> Wilkinson [one of the prior art references identified by the Patent Examiner] relates to an apparatus for providing a device with a pre-purchased, selectable quantity of power from a primary power source. Wilkinson specifically relates to an apparatus for recharging electric vehicles. This apparatus, like those discussed above, is a prepaid method so that when the fixed amount of value has been used, the unit stops dispensing power. ***This type of system [the prior art] is not an open-ended transaction as that set forth in the present invention.***

There is no qualification that this admission is limited just to claim 22 as amended.[6]

### D.  Conclusion

PowerOasis' repeated mischaracterizations of Dr. Cooley's deposition testimony and other newly-minted "reply" arguments do nothing to alter the plain meaning of the

---

[5] PowerOasis does not, and cannot, dispute that the prosecution history of the '487 application is relevant to construction of terms in the patents-in-suit because the '487 application and patents-in-suit are related. *Johnson v. Stanley Works*, 903 F.2d 812, 818 (Fed. Cir. 1990).

[6] PowerOasis makes the conclusory statement that the Patent Examiner of the '487 application recognized that "vending transaction" covers both "open-ended" and "prepaid" transactions. (PO Reply Br. at 10). There appears to be no support in the file history for this assertion.

8

asserted claims based on the intrinsic evidence.  As such, this Court should construe the disputed claim terms in a manner consistent with that intrinsic evidence, as detailed in Wayport's claim construction brief.

                                      Respectfully submitted,

Date: February 6, 2006

/s/ Amr O. Aly (admitted *pro hac vice*)
William F. Lee (BBO #291960)
David B. Bassett (BBO #551148)
Amr O. Aly (*pro hac vice*)
Gregory F. Noonan (BBO #651035)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Phone: 617-526-6000
Fax: 617-526-5000

## Certificate of Service

I hereby certify that on the 6th of February, 2006, a copy of the within pleading was electronically served upon:

Sibley R. Reppert, Esquire
William A. Scofield, Esquire

/s/ Amr O. Aly
Amr O. Aly, Esq.

10

US1DOCS 5500810v1