# Exhibit 4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12023-RWZ

POWEROASIS, INC. and POWEROASIS NETWORKS, LLC

v.

WAYPORT, INC.

## ORDER REGARDING CLAIM CONSTRUCTION

June 26, 2006

ZOBEL, D.J.

Plaintiffs PowerOasis, Inc. and PowerOasis Networks, LLC are vendors of wireless and wired telecommunications access systems available in airports and other public spaces. They hold exclusive rights to U.S. Patents Number 6,466,658 B2 (the "'658 Patent") and 6,721,400 B2 (the "'400 Patent," together with the '658 Patent , the "Patents") regarding certain telecommunications inventions. Defendant Wayport, Inc. competes with plaintiffs to provide wireless and wired services to the public and, according to plaintiffs, delivers these services in a manner that infringes the Patents. Plaintiffs therefore filed suit for infringement, and the dispute has narrowed to claims 15, 18, 31, 35, 38, 40 and 49 of the Patents. The Patents contain identical claim language and numbering, as well as virtually identical specification language, and the parties now seek claim construction for certain disputed terms.[1] The court held a

---

[1] In the interest of economy and clarity, references to patent language are cited only to the '400 Patent. However, the decision and its claim construction apply to both the '400 Patent and the '658 Patent.

<u>Markman</u> hearing and now construes the terms. <u>See</u> <u>Markman v. Westview</u> <u>Instruments, Inc.</u>, 52 F.3d 967 (1995).

Claim construction requires that the court construe "only those terms . . . that are in controversy, and only to the extent necessary to resolve the controversy." <u>Vivid</u> <u>Technologies, Inc. v. American Science & Engineering, Inc.</u>, 200 F.3d 795, 803 (Fed. Cir. 1999). "[T]he words of a claim 'are generally given their ordinary and customary meaning,'" in other words, "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). A disputed claim term may be interpreted according to "'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" <u>Id.</u> at 1314.

The seven claims at issue all depend from claim 1. The parties dispute both certain language in that claim and, as a threshold matter, whether the preamble to claim 1 may fairly be understood to limit the claim terms. The preamble to claim 1 provides for "[a] vending machine for vending telecommunications channel access to a customer, said vending machine comprising . . . ." ('400 Patent 16:2-4). Defendant argues that claim 1 must be interpreted in light of the preamble description, while plaintiffs contend that the limitations in claim 1 and the other claims fully describe the patented invention without any need to reference the preamble. If the preamble limits claim 1, then "vending machine" is more than simply a name for the invention, such as

2

"device" or "apparatus." Whether the preamble limits claim 1 depends on whether "it states a necessary and defining aspect of the invention, or is simply an introduction to the general field of the claim." On Demand Machine Corp. v. Ingram Industries, Inc., 442 F.3d 1331, 1343 (Fed. Cir. 2006).

The preamble to claim 1 is not necessary to understand that the Patents teach a device, as opposed to a method. Neither is the preamble required to understand the purpose of the device as selling telecommunications channel access to a customer, since claim 1 itself describes a "telecommunications channel access circuit adapted to be connected to at least one external telecommunications channel for enabling access . . . ." ('400 Patent 16:11-13). The preamble does clarify, however, that the invention is not just any device, but a vending machine. The inventors' use of the term "vending machine" in the preamble allows them to describe their invention more efficiently throughout the rest of the patent, because "vending machine" communicates a certain structural framework for the invention. See, e.g., Bicon, Inc. v. Straumann Co., 441 F.3d 945, 952-53 (Fed. Cir. 2006)(finding that the preamble limited the claimed invention because it "recites essential elements of the invention pertaining to the structure of the [invention]"). Namely, "vending machine" establishes the framework of a single vending unit, albeit comprised of multiple components, as opposed to an apparatus composed of multiple vending units. This distinction is not otherwise clearly articulated in claim 1, since the only other occurrence of the term in claim 1 describes "a customer interface for indicating the status of said vending machine," and the other 48 claims all mention "vending machine" as, ultimately, claimed in claim 1. The fact

3

that subsequent mention of "vending machine" refers back to the preamble by use of the term "said," i.e., "said vending machine," also supports treating the preamble as an antecedent.  See Eaton Corp. v. Rockwell International Corp., 323 F.3d 1332, 1339 (Fed. Cir. 2003)(explaining that "when the body of the claim refers to 'said [device]' . . . it is referring back to the particular [device] . . . previously discussed in the preamble").  The pervasive use of the term throughout the Patents' specifications and claims further indicates that it served as more than simply a coincidental name for the invention.  Accordingly, claim 1 is limited by its preamble.

In anticipation of the potential finding that "vending machine" is more than simply a name for the invention, the parties dispute the meaning of this term.  They agree that the general dictionary definition of vending machine is a coin-operated machine for vending merchandise.  (See Pls.' Mem. On Claim Construction 10; Aly Decl. Ex. 9).  This definition may inform the claim construction of vending machine, "so long as [it] does not contradict any definition found in or ascertained by a reading of the patent documents."  Phillips, 415 F.3d at 1322-23.  For example, the specification clearly contemplates payment other than by coins, so an appropriate construction will not limit "vending machine" to coin operation.  (See '400 Patent 2:50-61).  Similarly, payment is clearly required "to initiate a vending transaction," and both the Patents' specifications and the preamble to claim 1 describe the vending of telecommunications channel access, not merchandise.  (See '400 Patent 2:43-45, 16:2-6, 12-17).

Although the dictionary definition describes "vending machine" as a single unit, plaintiffs still argue that vending machine should be construed as a system and method

4

for vending services to multiple users contemporaneously, not as a traditional "single, stand-alone device" in a fixed location. (Pls.' Mem. On Claim Construction 11-12). If the Patents' specifications "reveal a special definition given to [vending machine] by the patentee that differs from the meaning it would otherwise possess," such lexicography must control the claim construction of that term. Phillips, 415 F.3d at 1316. According to plaintiffs, the inventors intended vending machine to include "various components . . . distributed in diverse locations, rather than located in a single device." (Id. at 12). Defendant criticizes this construction as not representing the view of a person of ordinary skill in the art and offers, instead, its expert's opinion that equates "vending machine" with "essentially a payphone for computers," as the patent specification diagrams "each show a vending machine that is a unitary, self-contained structure," and "[n]o figures in the . . . patents show it otherwise." (Cooley Aff. ¶¶ 15 and 26). In opposition, plaintiffs characterize Figure 4 as describing "not a single, stand-alone device, but . . . a block diagram . . . , including blocks representing the various components and functions that have to be present to provide telecommunications channel access," with "no requirement that the equipment providing those functions be combined into one single device." (Pls.' Mem. On Claim Construction 11). Plaintiffs' characterization disregards the fact that Figure 4, in fact, illustrates a single device labeled as item 300 in the diagram and described in the specification as the single machine to which users would connect. (See '400 Patent 11:41-43 and Fig. 4).

At the Markman hearing, plaintiffs cited the following specification language as supporting the contemporaneous use of one vending machine by multiple customers:

5

> [I]t might be more cost effective to have one control unit operating multiple vending machines. These multiple vending machines may be arranged in the form of a kiosk to allow multiple customers access to the vending machine at the same time. Similarly, almost any combination of functional components of the vending machine could be moved to a location remote from the machine. This could be accomplished, for example, by networking a cluster of machines to a server either on site or at a remote location.

('400 Patent 4:28-37). This language describes multiple customers being served by multiple vending machines, not a single machine. That multiple vending machines may share a single control unit does not logically transform the multiple units into a single machine that serves multiple users. Plaintiffs' argument that the sharing of a single control unit by multiple vending machines somehow converts the multiple machines into a single one effectively elevates the control unit to being the essence of a vending machine. Plaintiffs argue further that removing "any combination of functional components . . . to a location remote from the machine" leads to the same result, i.e., a single vending machine with multiple extensions. This position distills the essence of a vending machine into an undefined collection of whatever functional components are removed from the machine. Such construction is neither sensible nor supported by the specification or the claims, particularly claim 1 which clearly identifies several elements of a vending machine that must be present in order to embody the invention. Plaintiffs have not demonstrated that the Patents defined "vending machine" other than as a traditional stand-alone machine that serves a single customer at a time.

In light of the applicable legal standard, the parties' written submissions, and the argument of counsel, I construe the disputed claim language as follows:

6

| Term | Court's construction |
|------|---------------------|
| Vending machine | A device for vending telecommunications channel access to a single customer at a time when the customer provides sufficient payment |

The next disputed term, "payment mechanism," first appears in claim 1 and occurs in several subsequent, dependent claims, including the disputed claim 49. Plaintiffs define "payment" as "paying money in some form," and "mechanism" as "machinery or process for achieving a result." (Pls.' Mem. On Claim Construction 13). Defendant interprets "payment mechanism" to mean "an arrangement of connected parts for payment that is part of the vending machine," as based on its understanding of the specification and the dictionary definition of mechanism. (Def.'s Rebuttal Claim Construction Br. 19). Defendant properly disputes plaintiffs' construction of mechanism as a process or method, since the Patents disclose an apparatus, not a method or process. The specification language cited by plaintiffs in support of its proposed definition allows payment by currency or "in electronic form," referring to contemporaneous payment by an electronically-read or magnetically-read card (e.g., credit card, debit card, hotel key card) or other such device. ('400 Patent 2:50-56). The specification also suggests that payment may be "carried out through software that is present in the user's laptop or other device," and that "no physical method need be included in the vending machine." ('400 Patent 2:55-56, 3:23). Contrary to plaintiffs' claim, this does not mean that the vending machine's payment mechanism is located external to the vending machine, especially in light of the specification and claim

7

language that clearly defines a vending machine as comprised of, in part, a payment mechanism. Rather, instead of being made by a credit card, the payment may be made by electronic currency, e.g., "e-money," or an online service that issues credit to the user and separately bills the user. These are examples of forms of payment, and while these may be dictated by the type of payment mechanism located in the vending machine (for example, if the vending machine does not contain a mechanism for accepting currency but only for processing e-money), they do not dictate the location of the vending machine's payment mechanism.

Accordingly, I construe the disputed claim language as follows:

| Term | Court's construction |
|------|---------------------|
| Payment mechanism | An arrangement of connected parts for paying money in some form and that is part of the vending machine |

The parties also dispute the meaning of "customer interface," as this term appears in claims 1 and 15. Plaintiffs do not appear to dispute defendant's definition regarding the purpose of the customer interface as "communicating information about the status of the vending machine to the customer." (Def.'s Rebuttal Claim Construction Br. 21). The parties' disagreement instead rises from plaintiffs' definition of interface as "the place where two different systems meet and interact with each other," for example, "a GUI (graphic user interface, the display on a computer screen," with the vending machine as one system and the user as a second system. (Pls.' Mem. On Claim Construction 14). Defendant disputes this definition to the extent that it would allow a vending machine's customer interface to be located elsewhere than in

8

the machine. Plaintiffs argue that support for the remote location of an interface comes

from specification language providing that "[a]lternatively, the user interface can be

present inside or uploaded to the user's laptop or other device thereby obviating the

need for an interface within the vending machine unit." ('400 Patent 6:20-23).

Defendant's expert correctly clarifies, however, that this provision "describes an

arrangement where the vending machine does not have a customer interface." Cooley

Aff. ¶ 43. Indeed, the specification clarifies that presence of the interface on a user's

computer "obviat[es] the need for an interface within the vending machine unit." ('400

Patent 6:22).

I construe the disputed claim language as follows:

| Term | Court's construction |
| --- | --- |
| Customer interface | A part of the vending machine for communicating information about the status of the vending machine to the customer |

The disputed term "vending transaction" appears multiple times in claim 1,

including in the context of ". . . at least one external telecommunications channel for

enabling access . . . at the beginning of a vending transaction and disabling access at

the end of the vending transaction." ('400 Patent 16:11-16). It is also included in the

claim 1 phrase, "when the vending transaction is completed." Id. at 16:10-11. The

parties agree that "when the vending transaction is completed" means "when the

customer's connection to the vending machine has been terminated or the customer's

payment has been exhausted." (Pls.' Mem. On Claim Construction 15; Def.'s Rebuttal

Claim Construction Br. App. A). They disagree, however, about whether completing a transaction upon exhaustion of the customer's payment means that a customer may pre-pay for multiple access sessions and treat these as a single vending transaction. To that end, plaintiffs define "vending transaction" as "the transaction by which telecommunications channel access is provided to the customer in exchange for payment by or on account of the customer," while defendant proposes "a single open-ended session delineated by a turning on and off of access to the telecommunications channel ('pay-as-you-go') and does not include multiple session ('prepaid subscription')." (Pls.' Mem. on Claim Construction 15; Def.'s Rebuttal Claim Construction Br. 22).

The specification states that a "transaction ends when the customer disconnects from all of the connectors or otherwise indicates that the customer is finished." ('400 Patent 2:67–3:1-2). According to the first preferred embodiment, a "transaction ends when the customer disconnects from the power connector and the telecommunications channel access connector or wireless connector . . . ." Id. at 6:27-29. Another embodiment provides that "[w]hen the customer is finished, they merely disconnect from the connectors and leave. The central control unit automatically senses this event [and] records the end of the transaction ... ." Id. at 9:18-21. Later embodiments include "push-buttons that would allow the customer to select the language for the display, the connectors to be activated and, optionally, when to terminate the transaction. In the later case, the customer could push a button that would terminate the transaction and the connection, even though he had not disconnected from the connectors." Id. at

10

9:36-43. Yet another embodiment posits that "[w]hen the customer has stopped using both power and the telecommunications channel for six seconds, the program terminates the transaction by recording the stop time and turning off the switchable power circuit (when present), the switchable telecommunications channel (when present) and the Available light (when present)." Id. at 14:20-26.

Neither these nor any other preferred embodiment describes a vending transaction as including more than one session. Moreover, in portraying the use of buttons or other means for terminating a session, the embodiments clarify the prior specification language that defines the end of a transaction as occurring either when the customer disconnects or "otherwise indicates" that the customer is finished. While the Federal Circuit "ha[s] repeatedly warned against confining the claims to [very specific] embodiments" and "strictly limiting the scope of the claims to the embodiments disclosed in the specification," it has also discouraged "divorcing the claim language from the specification." Phillips, 415 F.3d at 1323-24. Appropriate interpretation will consider the full context of the patent. See id.

For these reasons, I construe the disputed claim language as follows:

| Term | Court's construction |
| --- | --- |
| Vending transaction | A single open-ended session – not multiple sessions – initiated by payment by the customer and delineated by a turning on and off of access to the telecommunications channel |

Although the parties articulate different definitions of the phrase "enabling access to the [sic] at least one external telecommunications channel . . . and disabling

11

access at the end of the vending transaction," their respective interpretations do not seriously conflict. Plaintiffs suggest "activating the telecommunications channel so telecommunications can take place, . . . [and then] deactivating the telecommunications channel." (Pls.' Mem. On Claim Construction 16). Defendant proposes "turning on and off access to the external telecommunications channel so that communications through the vending machine to and from the telecommunications channel can or cannot take place." (Def.'s Rebuttal Claim Construction Br. 22).

I accept plaintiff's proposal and construe the language as follows:

| Term | Court's construction |
|------|----------------------|
| Enabling access to at least one external telecommunications channel . . . and disabling access at the end of the vending transaction | Activating at least one telecommunications channel . . . and deactivating that telecommunications channel at the end of the vending transaction |

Plaintiffs define "telecommunications channel access connector," the next disputed term, as "a device providing a connection such as a plug or a wireless connector," in contrast to defendant's definition of "a physical device providing a connection, such as an outlet, receptacle, or plug." (Pls.' Mem. on Claim Construction 17; Def.'s Rebuttal Claim Construction Br. 24). The specification language cited by both parties states that "[t]he customer selects which utilities or services they require, typically by just connecting to the appropriate connector (also know [sic] as outlet, receptacle, or plug) either through physical means or through wireless connections such as infrared." ('400 Patent 2:61-65). This language describes a vending machine device that accepts a customer's means of connection, be it a plug or a wireless

12

connector, and both parties' proposals reflect this description.

Accordingly, I construe the disputed claim language as follows:

| Term | Court's construction |
|------|---------------------|
| Telecommunications channel access connector | A device providing a connection, such as an outlet, receptacle, or plug |

Claim 15 teaches "[a] vending machine as claimed in claim 1, wherein said customer interface comprises a mechanism that interfaces with software supplied by the customer." ('400 Patent 16:65-67). According to plaintiffs, "mechanism that interfaces with software supplied by the customer" means "machinery or process that involves interacting with software that is loaded on the customer's computer." (Pls.' Mem. On Claim Construction 18). To the contrary, defendant proposes "a mechanism (as construed above) that interacts with software made available to the vending machine by the customer." Plaintiffs offer no support for their assertion that this language describes a process, and the earlier claim construction of "customer interface" resolves any issue regarding location of the customer interface.

The proper construction is as follows:

| Term | Court's construction |
|------|---------------------|
| Mechanism that interfaces with software supplied by the customer | A mechanism (as construed above) that interacts with software made available to the vending machine by the customer |

Claim 38 describes "[a] vending machine as claimed in claim 1, wherein said control unit is located remote from said vending machine." ('400 Patent 18:17-19). In disputing the proper interpretation of the phrase "located remote from said vending

13

machine," the parties raise essentially the same points made with respect to claim construction of the term "vending machine" and whether it must be construed as a single unit. The reasoning set forth in the construction of "vending machine" as well as the construction of "customer interface" dictate a similar finding in this case, namely, that the control unit is not simply remote from other components but – as plainly stated in the claim – from the vending machine itself.

Thus, the following construction:

| Term | Court's construction |
|------|---------------------|
| Located remote from said vending machine | Having a different physical location than the vending machine |

Plaintiffs lastly propose construction of the phrase "circuitry for controlling a plurality" as it is used in claim 40 with respect to "[a] vending machine as claimed in claim 1, wherein said control unit further comprises circuitry for controlling a plurality of vending machines." ('400 Patent 18:23-25). Plaintiffs suggest "electronic circuitry that is able to control telecommunications access for a number of external devices of customers." (Pls.' Mem. On Claim Construction 22). Defendant's brief does not propose an alternate meaning. However, plaintiffs' recommendation baldly ignores the plain language of the claim in which "plurality" clearly modifies "vending machines," not customer devices.

The disputed term has the following meaning:

| Term | Court's construction |
|------|---------------------|
| Circuitry for controlling a plurality of vending machines | Circuitry for controlling more than one vending machine |

14

06/26/06
DATE

/s/ Rya W. Zobel
RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE