**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| POWEROASIS, INC. and ) <br> POWEROASIS NETWORKS, LLC, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WAYPORT, INC. ) <br> ) <br> Defendant. ) | Civil Action No. 04-12023 RWZ |

**PLAINTIFFS' OPPOSITION TO WAYPORT'S MOTION TO PRECLUDE
THE SECOND DECLARATION OF RICHARD E. MORLEY**

PowerOasis, Inc. and PowerOasis Networks, LLC, ("PowerOasis") oppose Wayport, Inc.'s ("Wayport") motion to preclude the Second Declaration of Richard E. Morley.

### I.   FACTUAL BACKGROUND

PowerOasis commenced this action against Wayport by filing a complaint for infringement of U.S. Patent No. 6,466,658 ("the '658 patent") and U.S. Patent No. 6,721,400 ("the '400 patent"). The complaint alleges generally that Wayport is infringing the patents-in-suit by vending wired and wireless telecommunications access to the public. PowerOasis asserts in this suit that Wayport's high speed Internet access ("HSIA") system infringes claims 15, 18, 31, 35, 40 and 49 of the '658 and '400 patents.

On May 12, 2005, in its answer to Wayport Interrogatory No. 2(c ) ("State whether each element of each asserted claim is claimed to be literally present or present under the doctrine of equivalents, and explain the basis of how each claim that is allegedly met under the doctrine of equivalents is so met"), PowerOasis identified the claims asserted, stated that they "are infringed by Wayport's wired and wireless internet access service, both literally and under the doctrine of

equivalents," and appended a chart setting forth the factual basis supporting its assertion of infringement. At no time did Wayport request any further response to this interrogatory.

Prior to this Court's construction of the claims in issue, the parties exchanged expert reports and took expert depositions. PowerOasis' expert, Richard Morley, stated the factual reasons why he believed that each element of the asserted claims, under the claim construction proposed by PowerOasis, was found in the Wayport system. Mr. Morley is an engineer, not a legal expert, and his report did not opine whether Wayport's infringement was "literal" or "under the doctrine of equivalents."

The parties completed fact discovery on November 8, 2005, and completed expert discovery on January 20, 2006. Thereafter, the parties submitted opposing briefs on disputed claim construction issues. The Court held a Markman hearing on February 8, 2006, and took the matter under advisement. On June 26, 2006, the Court entered an Order Regarding Claim Construction, providing its construction of the claim terms disputed by the parties.

The Court's claim construction differed significantly from PowerOasis' proposed construction regarding which Mr. Morley had evaluated the Wayport system.

Wayport moved for summary judgment of non-infringement on July 26, 2006, arguing that its HSIA system did not infringe the asserted claims of the '658 and '400 patents as construed by the Court.

PowerOasis opposed Wayport's motion on the ground that Wayport has failed to meet its burden of establishing that the accused Wayport HSIA system does not infringe the patents-in-suit either literally or under the doctrine of equivalents. In support of its opposition, PowerOasis submitted the Second Declaration of Richard E. Morley ("Morley Second Declaration")

regarding the insubstantiality of the differences between the Wayport HSIA system and the elements of the asserted claims as construed by this Court.

In response to PowerOasis' opposition to Wayport's motion for summary judgment, Wayport has now filed a proposed reply brief, along with an accompanying motion seeking to "preclude" the Morley Second Declaration, arguing that the Morley Second Declaration is not timely. For the reasons stated herein, PowerOasis opposes Wayport's motion to preclude the Morley Second Declaration.

## II. SUMMARY OF THE ARGUMENT

To prevail on its motion for summary judgment of non-infringement, Wayport has the burden of establishing that the accused Wayport HSIA system does not infringe the patents-in-suit, either literally or under the doctrine of equivalents. Wayport has not met this burden, and instead is attempting to circumvent the doctrine of equivalents by asserting falsely that PowerOasis did not raise the doctrine of equivalents in a timely manner. Wayport's arguments are both legally and factually erroneous, and its motion to preclude the Morley Second Declaration should be denied.

PowerOasis is entitled under Fed. R. Civ. P. 56 to oppose Wayport's motion for summary judgment of non-infringement by submitting evidence by affidavit, such as the Morley Second Declaration, which establishes that any differences between the Wayport HSIA system and the claims as construed by the Court are insubstantial, and which at a minimum raises genuine issues of material fact as to whether Wayport infringes literally or under the doctrine of equivalents. PowerOasis and its expert could not have provided this evidence any earlier during the course of discovery, because the evidence consists of a comparison between the Wayport system and the Court's claim construction that was only entered after the close of discovery.

Contrary to Wayport's motion, PowerOasis never waived the doctrine of equivalents, and its present assertion of that doctrine in opposition to Wayport's summary judgment motion is timely. PowerOasis asserted a general claim of patent infringement against Wayport in its original complaint that encompasses both literal infringement and infringement under the doctrine of equivalents. PowerOasis also asserted infringement under the doctrine of equivalents in response to Wayport's discovery requests.

Mr. Morley's initial expert report on November 5, 2005, and his deposition on January 9, 2006, both preceded the Court's claim construction. Mr. Morley's expert opinion was based on the construction of the claims as proposed and believed to be correct by PowerOasis. Mr. Morley did not opine at that time on any alternative claim construction, and he would have had no basis to do so. In his report, Mr. Morley expressly reserved the right to supplement his opinion if the construction adopted by the Court differed materially from the construction proposed by PowerOasis. (Expert Report of Richard E. Morley, p. 4.) Only after the Court entered its Order Regarding Claim Construction on June 26, 2006, was Mr. Morley in a position to compare the claims as newly construed by this Court and the Wayport system.

On July 26, 2006, Wayport filed its motion for summary judgment of non-infringement. In his Second Declaration, Mr. Morley responded to Wayport's summary judgment motion and explained, element by element, how in his opinion the Wayport HSIA system is at most insubstantially different from the claims as construed by the Court.

Mr. Morley's Second Declaration is legally sufficient to raise a genuine issue of material fact under the doctrine of equivalents, as it recites admissible evidence and provides particularized testimony and linking arguments as to the insubstantiality of the differences between the Wayport HSIA system and the "vending machine," "payment mechanism,"

"customer interface," and "vending transaction" elements of the asserted claims, as construed by the Court.

## III. ARGUMENT

### A. Wayport Bears The Burden Of Proving Non-Infringement Under the Doctrine of Equivalents

Wayport's motion for summary judgment is not limited to the issue of literal infringement. The law is clear that, in order to prevail on its motion, Wayport also must prove that it does not infringe under the doctrine of equivalents. "Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device <u>either literally or under the doctrine of equivalents</u>." *PC Connector Solutions LLC v. Smartdisk Corporation*, 406 F.3d 1359, 1363 (Fed. Cir. 2005).

### B. Rule 56 Permits PowerOasis to Submit Affidavits Opposing Wayport's Motion for Summary Judgment of Non-Infringement

Wayport moved for summary judgment of non-infringement under Fed. R. Civ. P. 56. That rule specifically authorizes PowerOasis, as an opposing party, to submit affidavits, and indeed cautions that an opposing party may not rest upon mere allegations or denials of the adverse party's pleadings: "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Mr. Morley's Second Declaration does precisely that.

On a motion for summary judgment of non-infringement, the movant "has the initial responsibility of identifying the legal basis of its motion, and of pointing to those portions of the record that it believes demonstrate the absence of a genuine issue of material fact." *Novartis Corp. v. Ben Venue Labs, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001); see also *Intellical, Inc. v.*

*Phonometrics*, 952 F.2d 1384, 1389 (Fed. Cir. 1992).  Wayport has failed to meet its burden of proving that it does not infringe the asserted claims, as construed by this Court, under the doctrine of equivalents.  Indeed, Wayport offers <u>no</u> proof on that subject.  Assuming, however, that Wayport is held to have met its burden, PowerOasis is entitled to the have the opportunity to show that there is infringement under the doctrine of equivalents, or at least that there is a genuine issue.  *Novartis*, 271 F.3d at 1046; see also *Intellical*, 952 F.2d at 1389.

Wayport attempts to discredit Mr. Morley by alleging that in his prior deposition he had no opinion on the subject of the doctrine of equivalents.  Wayport misses the point.  Mr. Morley is an engineer, not a patent attorney, and he would not be expected to know or opine on patent law doctrines.  The substance of his testimony in both his Second Declaration and his prior deposition is to compare the claims under a given construction (firstly that of PowerOasis, and later that of the Court) with the Wayport HSIA system.  Mr. Morley is qualified to testify as to the significance *vel non* of the differences between the Wayport system and the elements of the claims as construed, and he has done so.

      **C.**    **PowerOasis' Claim of Infringement Under the Doctrine of Equivalents Was Raised at the Outset of the Case and During Discovery**

Wayport misleads this Court when it argues that the doctrine of equivalents was asserted "for the first time" in PowerOasis' opposition to Wayport's summary judgment motion.  To the contrary, the doctrine of equivalents has been at issue since the beginning of this case.  In its original complaint, PowerOasis' asserted a general claim of infringement of the '658 and '400 patents that was sufficient to invoke both literal infringement and infringement under the doctrine of equivalents.

The law is well settled that the nature of infringement – whether literal or under the doctrine of equivalents – need not be pleaded.  *See Liquid Dynamics Corp. v. Vaughan Co.*, 2002

U.S. Dist LEXIS 14102 (N.D. Ill. July 31, 2002). A general claim of patent infringement encompasses both literal infringement and infringement under the doctrine of equivalents. Therefore, PowerOasis' complaint for "infringement" was sufficient to cover both theories.

Also, contrary to Wayport's assertion, PowerOasis specifically raised the doctrine of equivalents during discovery. PowerOasis stated in response to Wayport's Interrogatory No. 2 that the asserted claims of the '658 and '400 patents "are infringed by Wayport's wired and wireless internet access service, *both literally and under the doctrine of equivalents*" (emphasis added), and provided an accompanying claim chart. PowerOasis has never asserted that it was not relying on, or otherwise waived its right to raise, the issue of infringement under the doctrine of equivalents.

>    D.    The Cases Cited By Wayport Are Inapposite

To support its position, Wayport cites cases that are wholly inapplicable to the facts of this case. For example, Wayport relies on *Cytyc Corp. v. TriPath Imaging, Inc.*, 2005 WL 1527883 (D. Mass. 2005). *Cytyc*, however, did not involve the doctrine of equivalents as applied to a claim construction entered by the Court only after expert reports had been exchanged and expert discovery had been completed. Unlike the expert report proffered in *Cytyc*, Mr. Morley could not have submitted his Second Declaration regarding the alleged differences between the claims elements as construed by the Court and Wayport's HSIA system any earlier in the discovery process. Only after the Court entered an order construing the claims in a way different from PowerOasis' proposed construction was Mr. Morley in a position to render an opinion regarding the insubstantiality of those differences.

The other cases relied upon by Wayport are no more apposite. *Thibeault v. Square D. Co.*, 960 F.2d 239 (1st Cir. 1992), cited by Wayport, was a "run-of-the-mill" product liability

case involving different theories about how injuries were allegedly caused to the plaintiff's arm. The court in *Thibeault* held that the plaintiff could not submit new expert opinions on the issue of causation just four days before trial, where he had sufficient time to conduct pretrial discovery in a timely manner.  *Thibeault* did not involve either patent infringement, or the admissibility of evidence relevant to the doctrine of equivalents under a recent claim construction by the court.

In *Powell v. Storz Opthalmics, Inc.,* 1994 U.S. Dist. LEXIS 20202, 34 U.S.P.Q.2d 1136 (M.D. Fla. 1994), aff'd, 53 F.3d 437 (Fed. Cir. 1995), a patent case cited by Wayport, the court precluded the plaintiff from introducing the doctrine of equivalents issue only after the plaintiff had answered an interrogatory stating "at present Powell is relying on literal infringement." *Powell* is distinguishable from the present case on its facts.  Unlike the plaintiff in *Powell*, PowerOasis has *never* asserted that it was relying solely on literal infringement, or that it waived the doctrine of equivalents.

Finally, in *Transclean Corp. v. Bridgewood Servs.*, 77 F.Supp.2d 1049 (D.Minn. 1999), aff'd in relevant part, 290 F.3d 13564 (Fed. Cir. 2002), also cited by Wayport, the court precluded the defendant from asserting a defense of non-infringement, and entered summary judgment of infringement for the plaintiff, where the defendant had raised only the defenses of invalidity and unenforceability previously.  The defendant's proposed non-infringement defense was not based on any recent claim construction ruling by the court, and there was no reason that it could not have been raised earlier.  *Transclean* is inapplicable to this case, both because PowerOasis did raise the doctrine of equivalents issue in a timely manner, and because the Morley Second Declaration is timely, in light of the recent claim construction ruling in this case.

### E. Mr. Morley's Second Declaration Is Legally Sufficient

Wayport argues that Mr. Morley's Second Declaration is insufficient, because it does not provide "particularized testimony and linking arguments." To the contrary, Mr. Morley's Second Declaration fits squarely within the criteria set forth in *Hilton Davis* and later reaffirmed in *Texas Instruments Inc. v. Cypress Semiconductor Corp.,* 90 F.3d 1558, 1567 (Fed. Cir. 1996) (a patentee must provide "particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents"). There is nothing generalized about Mr. Morley's Second Declaration in which he opines on the insubstantial differences between the claimed "vending machine," "payment mechanism," "customer interface," and "vending transaction" elements and the Wayport system.

Mr. Morley explains in his Second Declaration that the Waypoint HSIA system is not substantially different from the claimed "vending machine" under the Court's construction, even if it is read to require that all the components must be collocated. First, he describes how the components that comprise both systems are either identical, or at most insubstantially different. Then he confirms, based on his expertise in the field of engineering and system design, that *the location of the components* (whether in close proximity or more widely spread out) *makes no difference,* because the system is the same, functionally speaking, if it has the same components. Both systems *perform the same function,* e.g., vending telecommunications channel access, *work in the same way,* e.g., by using the components to obtain payment from the customer, and making telecommunications channel access available to the customer under the command of a control unit, and *achieve the same result*, e.g., access is vended to a customer after payment has

been made, for the period determined and paid for by the customer. He also applies the same analysis from the customer's perspective, and confirms that it makes no difference whether the components are collocated or distributed, because the way the customer connects his laptop computer, makes payment, and sees the customer interface sent to his screen by the Wayport components, are all the same.

Mr. Morley also explains that the vending machine provided to the customer using the Wayport HSIA system is not substantially different from the claimed vending machine, even if other people are simultaneously using other "vending machines" in the Wayport system. Each customer has an individualized experience with the Wayport HSIA system. Only one person can use a specific connection (e.g., a wired port, or a wireless frequency) at a time, and only one person's communication (data packet) can be transmitted and processed over a single frequency at a time. To the extent that the Wayport HSIA system is able to accommodate multiple customers at the same time, it does so by providing each customer with his own individualized "vending machine," including his own individual connection, a unique IP address, and specific individualized web pages constituting the customer interface for that individual.

Mr. Morley explains that the "payment mechanism" element, as construed by the Court, and the payment mechanism in the Wayport HSIA system are not substantially different. Both rely on parts that are connected in some manner, either mechanically, electrically, or electromagnetically, so that the components can communicate and operate together. Both *perform the same function*, e.g., enabling the customer to make a payment in exchange for vended access, *work in the same way*, e.g., providing a mechanism for obtaining and processing the customer's credit card and other information, whereby the customer makes payment in electronic form, and *achieve the same result*, e.g., transmitting the name and address of the

customer, the customer's credit card number, and any other required security information for the customer's account, so that payment can be completed electronically.

Mr. Morley goes through a similar analysis for the claim elements "customer interface" and "vending transaction."  He explains factually how the customer interface for the Wayport HSIA system is not substantially different from the claimed invention, where the Wayport components transmit individualized web pages to the customer's unique IP address that communicate information, including "status information," to the customer.

Similarly, he explains factually how the vending transaction in the Wayport system is not substantially different from the vending transaction in the claimed invention, where the Wayport HSIA system activates, or turns on, access to the general Internet at the beginning of the "session" selected and paid for by the customer, and deactivates, or turns off, access after the payment has been exhausted at the end of the "session."  He further explains that it makes no substantial difference whether the length of the session is determined at the beginning, or at the end, of the session.  The length of the session is still entirely up to the user, the user is able to have Internet (telecommunications) access during the time the session is active, and the user can also extend or renew the session at will if he chooses.

Finally, Mr. Morley explains with respect to claim 31, providing for a "direct Internet connection via an Internet Service Provider selected by the vending machine," that it makes no substantial difference who acts as the ISP, i.e., whether it is a third-party, or it is the same entity that operates the "vending machine."  In both cases, the customer is provided with a direct Internet connection without having to go to his own ISP.

**IV.     CONCLUSION**

Wayport's motion to preclude the Morley Second Declaration seeks to block evidence relevant to the issue of infringement under the doctrine of equivalents based on the Court's claim construction, where that issue has been properly raised and preserved. For the reasons stated herein, Wayport's motion should be denied.

Respectfully submitted,

POWEROASIS, INC. and
POWEROASIS NETWORKS, LLC
By their attorneys,

/s/ William A. Scofield, Jr.

Sibley P. Reppert, B.B.O. No. 416900
William A. Scofield, Jr., B.B.O. No. 448940
LAHIVE & COCKFIELD, LLP
28 State Street
Boston, Massachusetts 02109–1784
(617) 227-7400 (telephone)
(617) 742-4214 (fax)

**CERTIFICATE OF SERVICE**

I, William A. Scofield, Jr., hereby certify that I caused the foregoing to be served via the Court's ECF system on counsel of record this 22nd day of September, 2006.

/s/ William A. Scofield, Jr.

William A. Scofield, Jr.