# EXHIBIT A

# United States Court of Appeals for the Federal Circuit

2007-1265

POWEROASIS, INC.
and POWEROASIS NETWORKS, LLC,

Plaintiffs-Appellants,

v.

T-MOBILE USA, INC.,

Defendant-Appellee.

Sibley P. Reppert, Lahive & Cockfield LLP, of Boston, Massachusetts, argued for plaintiffs-appellants.  With him on the brief was William A. Scofield, Jr.

William F. Lee, Wilmer Cutler Pickering Hale and Dorr LLP, of Boston, Massachusetts, argued for defendant-appellee.  With him on the brief were David B. Bassett and Amr O. Aly, of New York, New York.

Appealed from:  United States District Court for the District of New Hampshire

Judge Paul J.  Barbadoro

# United States Court of Appeals for the Federal Circuit

2007-1265

POWEROASIS, INC. and POWEROASIS NETWORKS, LLC,

Plaintiffs-Appellants,

v.

T-MOBILE USA, INC.,

Defendant-Appellee.

Appeal from the United States District Court for the District of New Hampshire in case no. 05-CV-42, Judge Paul Barbadoro.

_____

DECIDED:  April 11, 2008

_____

Before NEWMAN, SCHALL, and MOORE, <u>Circuit Judges</u>.

MOORE, <u>Circuit Judge</u>.

PowerOasis, Inc. and PowerOasis Networks, LLC (PowerOasis) appeal the United States District Court for the District of New Hampshire's grant of summary judgment that claims 15, 18, 31, 35, 38, 40, and 49 (asserted claims) of U.S. Patent Nos. 6,466,658 ('658 patent) and 6,721,400 ('400 patent) are invalid as anticipated under 35 U.S.C. § 102(b).  In reaching its decision, the district court concluded that none of the asserted claims of the two patents were entitled, under 35 U.S.C. § 120, to the benefit of the filing date of PowerOasis's original application because the earlier application did not provide a written description of the invention claimed in the asserted patents, as required by 35 U.S.C. § 112.  We affirm the grant of summary judgment of

invalidity with respect to all asserted claims.

BACKGROUND

The two PowerOasis patents at issue, the '658 patent and the '400 patent (PowerOasis patents), are directed to vending machines that sell telecommunications access. The PowerOasis patents contain virtually identical specifications. The stated purpose of the PowerOasis patents is to provide a "vending machine" that enables a customer to connect a laptop to a telecommunications channel. The '658 and '400 patents list filing dates of November 6, 2001 and October 15, 2002, respectively. The '658 and '400 patents stem from a series of continuation and continuation-in-part applications. The first application in the patent chain (Original Application) was filed on February 6, 1997 and ultimately issued as U.S. Patent No. 5,812,643 ('643 patent). PowerOasis does not assert the '643 patent in this litigation.

PowerOasis filed a continuation application on September 18, 1998 (which was later abandoned), and on June 15, 2000, it filed a continuation-in-part application (2000 CIP Application), which issued as U.S. Patent No. 6,314,169 ('169 patent). The '169 patent is not asserted by PowerOasis in this litigation. The 2000 CIP Application added considerable new language to the specification, which the district court characterized as "substantial new matter." PowerOasis, Inc. v. T-Mobile USA, Inc., No. 05-cv-42-PB, 2007 WL 962937, at *2 (D.N.H. Mar. 30, 2007).

PowerOasis subsequently filed the two applications that led directly to the two patents asserted in this suit: first the '658 patent, then the '400 patent. PowerOasis sued T-Mobile for patent infringement alleging that T-Mobile's wireless "HotSpot

Network"[1] infringes claims 15, 18, 31, 35, 38, 40, and 49 of both PowerOasis patents.

Each of the asserted claims depends from independent claim 1, which is not asserted

by PowerOasis.  Except for minor variations in the language of the independent claims

that do not relate to the issues on appeal, the language of the asserted claims is

identical in both PowerOasis patents.  Independent claim 1 recites:

> 1. A vending machine for vending telecommunications channel access to a customer, said vending machine comprising:
>> a payment mechanism for obtaining information from the customer to initiate a vending transaction;
>> a customer interface for indicating the status of said vending machine;
>> an electronic circuit for determining when the vending transaction is completed;
>> a telecommunications channel access circuit adapted to be connected to at least one external telecommunications channel for enabling access to the at least one external telecommunications channel at the beginning of a vending transaction and disabling access at the end of the vending transaction;
>> a telecommunications channel access connector connected to said telecommunications channel access circuit for enabling connection to an external telecommunications device of the customer; and
>> a control unit having a device for receiving payment information from the customer and for controlling said electronic circuit and said telecommunications channel access circuit.

The parties had agreed that "customer interface" is "an interface that enables

information to be passed between a human user and hardware or software components

of a system," but disagreed about the location of the customer interface.  PowerOasis

argued that the "customer interface" may occur on a customer's laptop.  T-Mobile

---

[1]    The relevant features of the T-Mobile HotSpot Network are undisputed. Unlike a stand-alone vending machine that vends telecommunications access, the T-Mobile HotSpot Network consists of several main components that are geographically distributed throughout the United States.  These components work together to enable

argued that the customer interface must be located on the vending machine itself. Relying entirely on new language added to the 2000 CIP application, the district court adopted PowerOasis's proposed construction that the claim term "customer interface" encompasses an interface that is located on the customer's laptop.

In light of the district court's construction of "customer interface," T-Mobile filed a motion for summary judgment that the asserted claims were anticipated by the MobileStar Network.  It is undisputed that prior to June 15, 1999, MobileStar Networks, Inc. (a company acquired by T-Mobile in 2002) developed, deployed, publicly used, and offered for sale the MobileStar Network, which was a high-speed wireless data network that connected users to the Internet.  It is also undisputed that prior to June 15, 1999, the MobileStar Network contained all of the same features that form the basis of PowerOasis's allegation that the T-Mobile HotSpot Network infringes its patents.  T-Mobile argued, therefore, that this public use, sale, and offer for sale more than one year prior to the June 15, 2000 filing date of the 2000 CIP Application[2] constituted § 102(b) prior art which anticipated the PowerOasis patents.  35 U.S.C. § 102(b). PowerOasis responded by claiming its asserted claims should have the benefit of priority going all the way back to the filing date of its Original Application (February 6, 1997) which would antedate the MobileStar Network.

On summary judgment, the district court determined that the asserted claims were not entitled to the priority date of the Original Application because the written description of the Original Application did not support the later issued claims.  The

---

users to access Internet services.  Multiple users can simultaneously access the T-Mobile HotSpot Network.

[2]        T-Mobile does not dispute that the '658 and '400 patents are at least

district court noted that, to arrive at the broad construction it accorded the "customer interface," it relied "exclusively" on the new matter that was added to the 2000 CIP Application. <u>PowerOasis</u>, 2007 WL 962937, at *8. Because the district court concluded that the '658 and '400 patents are not entitled to the effective filing date of the Original Application, the district court granted the motion for summary judgment of invalidity. This appeal followed.

## DISCUSSION

We review the grant of summary judgment <u>de novo</u>. <u>Liebel-Flarsheim Co. v. Medrad, Inc.</u>, 481 F.3d 1371, 1377 (Fed. Cir. 2007). Summary judgment is not appropriate if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

PowerOasis appeals two aspects of the district court's summary judgment determination. First, PowerOasis argues that the district court erred when it placed the burden of proof on PowerOasis to show that it is entitled to the priority date of the Original Application. Second, PowerOasis argues that the district court erred in concluding that the disclosure of the Original Application does not provide a written description adequate to support the asserted claims of the '658 and '400 patents. <u>See</u> 35 U.S.C. § 112 ¶ 1. PowerOasis contends that, at a minimum, there is a genuine issue of material fact which prevents summary judgment of invalidity. We consider each issue in turn.

---

entitled to the effective filing date of the 2000 CIP Application, June 15, 2000.

I. Burden of Proof

It is well established that a patent is presumed valid, and "the burden of persuasion to the contrary is and remains on the party asserting invalidity." Ralston Purina Co. v. Far-Mar-Co, Inc., 772 F.2d 1570, 1573 (Fed. Cir. 1985). The district court acknowledged a challenged patent is entitled to a presumption of validity, but questioned whether the presumption of validity extends to the question of priority. The district court concluded that "when a dispute arises concerning whether a CIP patent is entitled to priority to the date of the original application and the Patent Office has not addressed the issue, the burden of proof ordinarily should rest with the party claiming priority to the date of the original application." PowerOasis, 2007 WL 962937, at *8. Accordingly, the district court held that PowerOasis had the burden of proving that it is entitled to claim priority to the filing date of the Original Application. Id.

PowerOasis contends that the party asserting invalidity must always bear the burden of proof as to whether claims in a patent application are entitled to the priority date of a parent application. PowerOasis relies on this court's decision in Ralston for support of its position that the party attacking validity bears the burden to show that claims stemming from a CIP application are not entitled to an earlier filing date. In short, PowerOasis argues the presumption of validity should include a presumption that claims in a CIP are all entitled to the earliest effective filing date.[3] In Ralston, both the

---

[3]    A "CIP" application is a continuation-in-part application containing a portion or all of the disclosure of an earlier application together with added matter not present in that earlier application. Transco Prods., Inc. v. Performance Contracting, Inc., 38 F.3d 551, 555 (Fed. Cir. 1994) (citing M.P.E.P. § 201.08). While the PTO has noted that the expressions "continuation," "divisional," and "continuation-in-part" are merely terms used for administrative convenience, id., the quintessential difference

U.S. Patent and Trademark Office (PTO) and the Board of Patent Appeals and Interferences (Board) made a priority determination.  Ralston Purina Co. v. Far-Mar-Co, Inc., 586 F. Supp. 1176, 1189, 1212 (D. Kan. 1984).  Ralston involved an appeal related to U.S. Patent No. 3,940,495, which issued from a continuation of application Serial No. 600,471, filed December 9, 1966 (1966 CIP application), which was a continuation-in-part of application Serial No. 381,853, filed July 10, 1964.  Id. at 1185. In Ralston, the 1966 CIP application had been the subject of an interference, which awarded the inventor the benefit of his earliest application in a detailed opinion by the Board.  Id. at 1189, 1213.  The district court in Ralston properly accorded deference to the Board's decision on priority.  See id. at 1213.

Additionally, the § 102(a) prior art on which the defendant in Ralston relied was brought to the attention of the examiner during prosecution.  See id. at 1212.  "When an attacker simply goes over the same ground travelled [sic] by the PTO, part of the burden is to show that the PTO was wrong in its decision to grant the patent."  Am. Hoist & Derrick Co. v. Sowa & Sons, 725 F.2d 1350, 1360 (Fed. Cir. 1984) (emphasis in original).   This court has explained that:

> When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.

Id. at 1359.  In Ralston, accordingly, the defendant had the added burden of overcoming the deference due to the PTO.

---

between a continuation and a continuation-in-part is the addition of new matter.

In contrast to Ralston, in this case, the PTO did not, at any point, make any determination with regard to the priority date of the various claims of the asserted patents.  There was no interference in this case related to the asserted patents or the 2000 CIP Application that awarded PowerOasis the benefit of priority for its Original Application nor was there any determination of priority during prosecution incident to a rejection.  The MobileStar Network prior art was never considered by the examiner.  In fact, in this case the PTO did not make a determination regarding the priority date for the asserted claims with respect to any reference.

In the absence of an interference or rejection which would require the PTO to make a determination of priority, the PTO does not make such findings as a matter of course in prosecution.[4]   The PTO's own procedures indicate that examiners do not make priority determinations except where necessary:

> Unless the filing date of the earlier nonprovisional application is actually needed, for example, in the case of an interference or to overcome a reference, there is no need for the Office to make a determination as to whether the requirement of 35 U.S.C. 120, that the earlier nonprovisional application discloses the invention of the second application in the manner provided by the first paragraph of 35 U.S.C. 112, is met and whether a substantial portion for all of the earlier nonprovisional application is repeated in the second application in a continuation-in-part.

---

Generally, a CIP adds new matter on which at least one claim relies for support.

[4]      Determining the effective filing date each claim in a CIP application is entitled to can be quite complex.  Since CIPs generally add new matter, the claims may be fully supported by the parent application or they may rely on the new matter for support.  See Michael J. Meurer & Craig Allen Nard, Invention, Refinement and Patent Claim Scope: A New Perspective on the Doctrine of Equivalents, 93 Geo. L.J. 1947, 2012 n.24 (2005) (noting "[u]nder the new matter doctrine, revisions to the written description that occur after an application is filed may jeopardize the priority date derived from that application").  In fact, a CIP could contain different claims entitled to receive different effective filing dates in the same patent.  There would be no reason for the PTO to undertake what could be a very time consuming written description analysis simply to pronounce the effective filing date of each claim, absent some dispute over it during prosecution.

M.P.E.P., Seventh Ed. (July 1998), at § 201.08.  When neither the PTO nor the Board has previously considered priority, there is simply no reason to presume that claims in a CIP application are entitled to the effective filing date of an earlier filed application. Since the PTO did not make a determination regarding priority, there is no finding for the district court to defer to.

Of course, the fact that the MobileStar Network prior art was never before the PTO does not change the presumption of validity or who has the burden of proof with respect to the prima facie case of invalidity.  See Am. Hoist, 725 F.2d at 1360. T-Mobile, the party asserting invalidity, must still show by clear and convincing evidence that the asserted patent is invalid.  Once it has established a prima facie case of invalidity and its burden is met, "the party relying on validity is then obligated to come forward with evidence to the contrary."  Ralston, 772 F.2d at 1573.

T-Mobile established its prima facie case of invalidity with respect to the asserted claims.  It is undisputed that the MobileStar Network was in public use more than one year prior to the June 15, 2000 filing date of the CIP Application.  PowerOasis conceded that the MobileStar Network would infringe the claims of the '658 and '400 patents if it were in operation today.  "[T]hat which would literally infringe if later in time anticipates if earlier."  Schering Corp. v. Geneva Pharms., Inc., 339 F.3d 1373, 1379 (Fed. Cir. 2003) (internal citation omitted).  Accordingly, PowerOasis has conceded that unless the asserted claims are accorded an earlier filing date than the 2000 CIP Application, the MobileStar Network is § 102(b) prior art.  Once T-Mobile established by clear and convincing evidence that the MobileStar Network was § 102(b) prior art to the asserted claims of the '658 and '400 patents, the burden was on PowerOasis to come forward

with evidence to the contrary.  The district court therefore correctly placed the burden on PowerOasis to come forward with evidence to prove entitlement to claim priority to an earlier filing date.

## II. Written Description Requirement

Application of the written description requirement is central to the resolution of this appeal.  "It is elementary patent law that a patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112."  In re Chu, 66 F.3d 292, 297 (Fed. Cir. 1995); see also Augustine Med., Inc. v. Gaymar Indus., Inc., 181 F.3d 1291, 1302-03 (Fed. Cir. 1999) ("Different claims of [a CIP] application may therefore receive different effective filing dates. . . . Subject matter that arises for the first time in [a] CIP application does not receive the benefit of the filing date of the parent application.").

To satisfy the written description requirement the disclosure of the prior application must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, [the inventor] was in possession of the invention."  Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991) (emphasis in original).  While a prior application need not contain precisely the same words as are found in the asserted claims, see Eiselstein v. Frank, 52 F.3d 1035, 1038 (Fed. Cir. 1995); Purdue Pharma LP v. Faulding Inc., 230 F.3d 1320, 1323 (Fed. Cir. 2000) (holding that the disclosure does not have to provide in haec verba support in order to satisfy the written description requirement), the prior application must indicate to a person skilled in the art that the inventor was "in possession" of the invention as later claimed.  Ralston, 772 F.2d at

1575; see also Janice M. Mueller, Patent Misuse Through the Capture of Industry Standards, 17 Berkeley Tech. L.J. 623, 638 (2002) ("The [written description] requirement operates as a timing mechanism to ensure fair play in the presentation of claims after the original filing date and to guard against manipulation of that process by the patent applicant.").  "Entitlement to a filing date does not extend to subject matter which is not disclosed, but would be obvious over what is expressly disclosed."  In re Huston, 308 F.3d 1267, 1277 (Fed. Cir. 2002) (quoting Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1571-72 (Fed. Cir. 1997)).  In Lockwood, we held:

> While the meaning of terms, phrases, or diagrams in a disclosure is to be explained or interpreted from the vantage point of one skilled in the art, all the limitations must appear in the specification. The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification. Rather, a prior application itself must describe an invention, and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.

107 F.3d at 1572.  We have explained that to satisfy the written description requirement, "the missing descriptive matter must necessarily be present in the [original] application's specification such that one skilled in the art would recognize such a disclosure."  Tronzo v. Biomet, Inc., 156 F.3d 1154, 1159 (Fed. Cir. 1998); see also Martin v. Mayer, 823 F.2d 500, 505 (Fed. Cir. 1987) (holding that the written description requirement is "not a question of whether one skilled in the art might be able to construct the patentee's device from the teachings of the disclosure. . . . Rather, it is a question whether the application necessarily discloses that particular device") (emphasis in original).   This requires that the written description actually or inherently disclose the claim element.  See Turbo Care Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co., 264 F.3d 1111, 1118-20 (Fed. Cir. 2001) (holding that to

comply with the written description requirement the location of the spring must be actually or inherently disclosed; that the location may be obvious from the disclosure is not enough); <u>Tronzo</u>, 156 F.3d at 1159 (holding a claim invalid for failure to satisfy the written description requirement when the specification did not disclose all cup shapes literally or "inherently").  Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party.  <u>See Invitrogen Corp. v. Clontech Labs., Inc.</u>, 429 F.3d 1052, 1072-73 (Fed. Cir. 2005).

Entitlement to the filing date of the Original Application would allow PowerOasis to antedate MobileStar Network, thereby removing it as a reference against the claims.  The only evidence PowerOasis came forward with to antedate the MobileStar Network was the Original Application and the declaration of its expert witness.  The district court analyzed both the Original Application and the declaration of PowerOasis's expert witness, and held that the asserted claims of the '658 and '400 patents are only entitled to the filing date of the 2000 CIP Application because PowerOasis did not prove it was "in possession" of the claimed invention when it filed its Original Application.

In this case, the district court's determination that the Original Application does not provide a written description of "customer interface" as set forth in the asserted claims is correct.  The Original Application described a vending machine with a "display" or "user interface" as part of the vending machine, rather than a vending machine with a "customer interface" located on a customer's electronic device.   The 2000 CIP Application added language describing a vending machine with a user interface located remotely from the vending machine, such as on a user's laptop, as shown by the

relevant new specification language underlined in the passages below:[5]

>The microprocessor also communicates with the customer via a user interface to provide details on the progress of the transaction.  <u>The user interface is not particularly limited and need not even include a visual display on the vending machine.</u>  '169 patent col.2 l.66 – col.3 l.3.

>Once attached and initiated, the customer can monitor the state of the vending machine and the transaction via the user interface.  <u>The user interface may be a visual display or some other type of progress indicator such as an auditory signal.  For example, the vending machine could instruct or inform the user via an audio speaker.  Alternatively, the user interface can be present inside or uploaded to the user's laptop or other device thereby obviating the need for an interface within the vending machine unit.  Similarly, the use of a card access system which prevents usage by ejecting the user's card would also obviate the need for a visual or aural interface.</u>  <u>Id.</u> at col.6 ll.7-19.

>Another object of this invention is portability.  Using an internal power source and wireless telecommunications channels, this invention is not limited to a fixed location.  In this configuration, the invention could be used at fairs, outdoor concerts and similar sites where permanent installations are not cost effective.  <u>In these cases, it might be more cost effective to have one control unit operating multiple vending machines.  These multiple vending machines may be arranged in the form of a kiosk to allow multiple customers access to the vending machine at the same time.  Similarly, almost any combination of functional components of the vending machine could be moved to a location remote from the machine.  This could be accomplished, for example, by networking a cluster of machines to a server either on site or at a remote location.</u>  <u>Id.</u> at col.4 ll.17-31.

The 2000 CIP Application also substituted the term "customer interface" for the claim term "display" in claim 1 and added several independent claims disclosing a "vending machine" with component parts "located remote from said vending machine."

The district court stated that it "cannot find a single reference in the written description which suggests that PowerOasis understood its invention to include the new matter that it claimed for the first time in the CIP Application."  <u>PowerOasis</u>, 2007

---

[5]     Other new matter not relevant to the customer interface was also added. <u>See, e.g.</u>, '169 patent col.2 ll.46-55; <u>id.</u> at col.3 ll.13-18; <u>id.</u> at col.10 ll.54-60; <u>id.</u> at

WL 962937, at *9.  We agree.  All of the references from the Original Application that PowerOasis identifies as allegedly providing written description support for the later-issued claims are to a "user interface" that is part of a unitary vending machine.

All of the Original Application's embodiments that include the user interface describe a physical display that is a part of the vending machine.  As shown in Figure 2, "[t]he customer sees an operating panel 101 with a user interface 110 comprising two lights referred to as READY and AVAILABLE."  '643 patent col.6 ll.27-29.



FIG. 2

"[I]n the preferred embodiment of Fig. 2, the user interface [110] consists of two lights which turn on and off in particular patterns to inform the customer as to how the transaction is processing."  Id. at col.6 ll.59-63.  The only depiction of the user interface 110 is depicted as part of the vending machine.  "When the customer first approaches the vending machine 100, the READY light is on."  Id. at col.6 ll.35-36 (emphasis added).

---

col.14 l.55 – col.15 l.7; figs.10-12.

PowerOasis argues that the user interface "could take any number of possible forms."  Appellant Br. 24.  To be sure, the specification describes other embodiments for the user interface.  For example, "these lights may be replaced or augmented by a video display unit (VDU) which provides more detailed instruction to the customer on vending machine operation and detailed information on the progress of the transaction including accumulated charges."  '643 patent col.6 ll.63-67.  The VDU "could be combined with a keyboard or other push-buttons that would allow the customer to set the language for the display, the connectors to be activated and, optionally, when to terminate the transaction."  Id. at col.7 ll.1-5.  In other embodiments, "the user interface includes a printer or similar device to provide the customer with a receipt for the transaction."  Id. at col.7 ll.8-10.  While the Original Application discloses multiple embodiments of the "user interface," all such embodiments make the user interface part of the unitary vending machine apparatus.  There is simply no disclosure in the Original Application of a user interface that is either located on a customer's laptop or even separate from the vending machine itself.

Indeed, although Figure 5 of the Original Application depicts a laptop hooked up to the vending machine, the figure shows that the user interface is clearly located <u>on the vending machine</u> and not the laptop.



FIG. 5

Id. at fig.5.  In Figure 5 of the Original Application, a laptop computer is connected to the operating panel of the vending machine (501), which is mounted on the wall.  The "user interface" is represented by the video display unit (510), which is located on the operating panel of the vending machine (502) and not on the laptop.  Therefore, we agree with the district court that the Original Application did not contain support for a "customer interface" located on the customer's laptop, which was the claim construction urged by PowerOasis and adopted by the district court.

This broad construction is supported only by the material added in the 2000 CIP Application.  In fact, PowerOasis cited only to language first introduced in the 2000 CIP Application to support this broad construction:

(1) "The user interface is not particularly limited and need not even include a visual display on the vending machine."  '658 patent col.3 ll.3-5 and '400 patent col.3 ll.7-9;

(2) "Alternatively, the user interface can be present inside or uploaded to the user's laptop thereby obviating the need for an interface within the vending machine unit."  '658 patent col.6 ll.15-18 and '400 patent col.6 ll.20-23; and

(3) "[A]lmost any combination of functional components of the vending

machine could be moved to a location remote from the machine." '658
patent col.4 l.30 and '400 patent col.4 l.33.

Because none of this support was present in the Original Application and because the
Original Application did not disclose a customer interface apart from the vending
machine, the asserted claims are only entitled to the 2000 CIP Application filing date of
June 15, 2000.  Since it is undisputed that the MobileStar Network was in public use
more than one year prior to this date, the asserted claims are invalid.

Further, we agree with the district court that PowerOasis's conclusory expert
declaration was not sufficient to raise a genuine issue of material fact regarding whether
the Original Application disclosed to one skilled in the art a customer interface located
on a customer laptop.  The district court determined, and we agree, that Mr. Morley
does not cite in a persuasive way any supporting references in the Original Application.
He does not demonstrate how, at the time of the filing date of the Original Application,
PowerOasis was in possession of the claimed invention, which uses a customer's
electronic device (e.g., a laptop) to achieve the customer interface.  He does not show
anywhere in the Original Application where a customer interface is located on a
customer's laptop either expressly or inherently.  His declaration points to figures and
discussions of the user interface in the Original Application, each of which is to a user
interface on the vending machine.  He goes on to say it is "well known to those of
ordinary skill as of February 6, 1997, that the functionality of providing information to a
customer via a user interface can be provided by displaying information on a computer
screen, such as on a portable computer of the type referred to in the '643 patent when
that computer is connected to a network of other components and computers."  This is
not a claim that use of a customer laptop as the customer interface is necessarily

disclosed by the Original Application.  At best, this is a statement that it would be obvious to substitute a customer laptop for the user interface disclosed on the vending machine.  Obviousness simply is not enough; the subject matter must be disclosed to establish possession.  See Turbo Care, 264 F.3d at 1119; Tronzo, 156 F.3d at 1159; Lockwood, 107 F.3d at 1571-72.  Therefore, the declaration by PowerOasis's expert does not raise a genuine issue of material fact over whether the Original Application established that the inventor possessed the invention as later claimed, which includes a customer interface located on a customer laptop apart from the vending machine.

Finally, despite the fact that the district court adopted the very construction urged by PowerOasis for "customer interface" on appeal, PowerOasis argues that a different construction ought to be used for validity purposes.  PowerOasis's argument boils down to a claim that PowerOasis is entitled to a broad claim construction for purposes of infringement and a different narrower claim construction for purposes of validity.  See Oral Arg. at 6:56-8:01, available at http://www.cafc.uscourts.gov/oralarguments/mp3/2007-1265.mp3; Appellant Brief at 18-24.  PowerOasis contends that as long as the claim term "customer interface" was supported by the Original Application then the claims are entitled to the effective filing date of the Original Application.  However, the construction of "customer interface" that must be supported by the written description of the Original Application is the construction given by the district court for the term as used in the '658 and '400 patents.  That the Original Application may support a narrower construction of "customer interface" as a display on the vending machine does not mean that the Original Application supports the broader construction of a "customer interface" as an interface

located on the customer's laptop (remote from the vending machine).  "[T]he invention is, for purposes of the 'written description' inquiry, <u>whatever is now claimed</u>."  <u>Vas-Cath</u>, 935 F.2d at 1564 (emphasis in original).  Since the Original Application does not support a "customer interface" on a customer laptop, the asserted claims are not entitled to the effective filing date of the Original Application.  Because the asserted claims are limited to the filing date of the CIP Application, June 15, 2000, they are anticipated by the MobileStar Network.

CONCLUSION

The district court correctly held that there is no genuine issue of material fact regarding the asserted claims being anticipated.  We therefore affirm the district court's summary judgment of invalidity of claims 15, 18, 31, 35, 38, 40, and 49 of the '658 and '400 patents.

<u>AFFIRMED</u>